**In re THURMAN CONSTRUCTION, INC., Debtor.**

**Charles W. GRANT, Trustee, Plaintiff,**

v.

**SUN BANK/NORTH CENTRAL FLORIDA, Defendant,**

v.

**ESTATE OF Beverly S. THURMAN, Defendant/Intervener.**

**Bankruptcy No. 94–00682–BKC–3P7. Adv. No. 95–66.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Nov. 14, 1995.

Robert A. Perry, Jacksonville, FL, for Plaintiff.

Scott A. Frick, Ocala, FL, for Defendant, Sun Bank.

Richard R. Thames, Jacksonville, FL, for Defendant/Intervener, Estate of Beverly S. Thurman.

GEORGE L. PROCTOR, Bankruptcy Judge.

## AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

This proceeding is before the Court upon the complaint of Trustee Charles W. Grant to recover fraudulent or preferential transfers made within one year of the petition date pursuant to 11 U.S.C. §§ 547 and 548. After a trial on July 26, 1995, the Court enters the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Thurman Construction Inc. (Debtor) was a builder of single family homes, operating in and around Ocala, Florida. (File Doc. 1). James E. Thurman and Beverly S. Thur-man (Thurmans) were principals of the corporation. On November 14, 1988, the Thurmans entered into a $40,000 revolving credit facility with Sun Bank of Ocala (now known as Sun Bank/North Central Florida, N.A.). (Defendant Ex. 1 and 2). The credit facility was renewed in March 1990, increasing the available credit to $60,000. (Defendant Ex. 3 and 4). The credit line was renewed again in April 1993. (Defendant Ex. 5). According to the Credit Authorization Fact Sheet prepared by Sun Bank, the purpose of the renewal was to obtain working capital for Thurman Construction, Inc. (Defendant Ex. 5).

2. This loan account was identified as obligation number 26. (Defendant Thurman Ex. 1). Draws on this line of credit were deposited directly into Thurman Construction's banking accounts and were disbursed in accordance with the company's working capital requirements. (Defendant Ex. 6, Defendant Thurman Brief. at 10).

3. In addition to the line of credit maintained by the Thurmans, the debtor established four loan accounts with Sun Bank in its own name. Those accounts were identified by obligation numbers 59, 75, 83, and 91. (Defendant Ex. 7).

4. In July 1993, James Thurman was killed in an automobile accident.

5. On February 17, 1994, Thurman Construction filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. (File Doc. 1).

6. In the year prior to the petition date, Sun Bank recorded the following transactions in the five accounts mentioned above:

| DATE | DESCRIPTION | AMOUNT | LOAN # |
|---|---|---|---|
| 4/19/93 | Interest Pymt. | $ 1,270.02 | 59 & 75 |
| 4/28/93 | Principal Adv. | 31,000.00 | 26 |
| 5/14/93 | Interest Pymt. | 73.56 | 26 |
| 6/16/93 | Interest Pymt. | 185.86 | 26 |
| 6/23/93 | Principal Adv. | 12,000.00 | 26 |
| 7/1/93 | Principal Adv. | 16,000.00 | 26 |
| 7/16/93 | Interest Pymt. | 268.09 | 26 |
| 7/23/93 | Interest Pymt. | 1,137.87 | 75 |
| 8/13/93 | Interest Pymt. | 352.33 | 26 |
| 9/28/93 | Interest Pymt. | 352.34 | 26 |
| 10/7/93 | Interest Pymt. | 340.96 | 26 |
| 10/22/93 | Interest Pymt. | 1,150.38 | 75 |
| 11/3/93 | Interest Pymt. | 316.18 | 91 |
| 11/16/93 | Interest Pymt. | 352.33 | 26 |
| 12/3/93 | Principal Pymt. | 10,000.00 | 26 |
| 12/10/93 | Interest Pymt. | 340.97 | 26 |

| DATE | DESCRIPTION | AMOUNT | LOAN # |
|------|-------------|--------|--------|
| 1/10/94 | Interest Pymt. | 277.54 | 26 |
| 1/12/94 | Principal Adv. | 10,000.00 | 26 |
| 2/14/94 | Interest Pymt. | 354.25 | 26 |

(Defendant Ex. 7).

7. In April 1994, Beverly S. Thurman died of kidney failure.

8. On February 17, 1995, Trustee Charles W. Grant (Plaintiff) filed a complaint against Sun Bank to recover payments make by debtor to Sun Bank in the year prior to the petition date, alleging that the payments were fraudulent or preferential transfers pursuant to 11 U.S.C. §§ 547 and 548.

9. Sun Bank answered the complaint, asserted affirmative defenses, and crossclaimed against the Estate of Beverly S. Thurman (Thurman Estate), alleging that the Thurman Estate "is liable for all sums recovered by the Trustee from Sun Bank as preferential or fraudulent transfers." (Defendant Answer File Doc. 7). Sun Bank also filed a contingent proof of claim against Beverly S. Thurman's Probate estate for any liability it may incur for these transfers.

10. On April 19, 1995, the Estate of Beverly S. Thurman was granted leave to intervene as a party defendant in this proceeding to protect its interests.

### CONCLUSIONS OF LAW

*I. Preferential Transfers Under 11 U.S.C. § 547*

In relevant portion, § 547 states:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title....

11 U.S.C. § 547(b).

Essentially, this section allows a trustee to recover transfers made to a creditor within a short time prior to the petition date. This prevents a creditor from receiving more than it would have received through liquidation and distribution of the estate assets. "A trustee who seeks to reclaim for the estate a pre-petition transfer which is characterized as a voidable preference bears the burden of demonstrating the presence of all elements of a preference, as established in § 547(b)." *In re Virginia–Carolina Financial Corp.,* 954 F.2d 193, 196 (4th Cir.1992).

*A. Transfers made to or for the benefit of a creditor*

In this case, the transfers sought to be avoided were made to or for the benefit of a creditor. The debtor made payments directly to Sun Bank. (Plaintiff Ex. 1 and Defendant Ex. 1–5). Sun Bank was a creditor of the debtor by virtue of loans 59, 75, 83, and 91. (Defendant Thurman Ex. 1). Sun Bank benefitted from the payments by having an outstanding loan balance reduced.

In addition, Payments made by the debtor to Sun Bank for loan 26 assisted the Thurmans by reducing the amount of their debt to Sun Bank. Beverly Thurman held an unsecured priority claim and an unsecured non-priority claim against debtor. (Debtor Schedule E and F). Thus, the Thurmans were insiders of the debtor and creditors who profited from the transfers.

The Court finds that the plaintiff has met his burden of proving that the transfers in question were made to or for the benefit of creditors.

## B. Transfers made on account of an antecedent debts

The transfers sought to be avoided were made on account of antecedent debts owed by the debtor before the transfers were made. On loan 59, the debtor received principal advances from Sun Bank on February 4, 1993, February 17, 1993, February 18, 1993, March 12, 1993, and March 19, 1993. Debtor made a payment on this loan on April 19, 1993. This transfer was made within one year of the petition date and was made on account of an antecedent debt. (Defendant Ex. 7).

On loan 75, the debtor received principal advances on February 4, 1993, February 12, 1993, February 17, 1993, March 12, 1993, and March 19, 1993. Debtor made an interest payment on this loan on April 19, 1993. This transfer was made within one year of the petition date and was made on account of an antecedent debt. (Defendant Ex. 7).

On loan 91, the debtor received principal advances on August 31, 1993, September 22, 1993, October 1, 1993, and November 3, 1993. On November 4, 1993, the debtor made a payment on this loan. This transfer was made within one year of the petition date and was made on account of an antecedent debt. (Defendant Ex. 7).

On loan 26, the debtor received principal advances on April 28, 1993, June 23, 1993, July 1, 1993, and January 13, 1994. Debtor made all payments on loan 26 after the advance on April 28, 1993. Thus, the transfers made on loan 26 were transfers made within one year of the petition date and were on account of an antecedent debt. (Defendant Ex. 7).

## C. Transfers made while debtor was insolvent

A summary of debtor's bankruptcy schedules indicates that the debtor had assets valued at $34,620 and liabilities totalling $257,211.29. (Plaintiff Ex. 6). Additionally, debtor's tax returns for 1992 and 1993 indicate that debtor was not capable of meeting its liabilities. (Plaintiff Ex. 2 and 11). The insolvency of the debtor at the time of the

transfers is not in dispute. The Court finds that the debtor was insolvent at the time of the transfers.

## D. Transfers made within one year of petition date for benefit of insiders

The earliest transfer sought to be avoided was made on April 19, 1993. (Plaintiff Ex. 1 and Defendant Ex. 7). The debtor filed for relief under the Code on February 17, 1994. Thus, all the transfers in question were made within one year prior to the petition date. (Defendant Ex. 7).

■ The Thurmans were the principals of Thurman Construction, Inc., and were thus insiders of the debtor. The Eleventh Circuit has held that the preference-recovery period is one year when the transfer produces a benefit for an inside creditor who is a guarantor. *In re Wesley Industries, Inc.*, 30 F.3d 1438, 1441 (11th Cir.1994). *See In re Air Forwarding Systems, Inc.*, 176 B.R. 638 (Bankr.M.D.Fla.1995). This view adopts the well known *Deprizio* decision entered by the Seventh Circuit in 1989. *Levit v. Ingersoll Rand Fin., Corp. (In re V.N. Deprizio Constr. Co.)*, 874 F.2d 1186 (7th Cir.1989).

Since the passage of the 1994 Bankruptcy Reform Act, Pub.L. No. 103–94, 108 Stat. 4106, 4121 (1994), the *Deprizio* decision has come under close scrutiny. The 1994 Act effectively overruled *Deprizio* through amendments to Section 550(c) of the Code. *See* 140 Cong.Rec. H 10,770 (October 4, 1994). The 1994 Act, however, only applies to cases filed after October 22, 1994.

Some argument exists that *Deprizio* should not be applied to this adversary proceeding because it was filed after the effective date of the Act. Recent case law, however, suggests that for purposes of applying the 1994 Act, the adversary proceeding is deemed filed as part of the main case. In this case, the petition date was February 17, 1994. The main case would not be subject to the 1994 Act. Thus, this Court finds that this adversary proceeding is governed by the Eleventh Circuit's *Wesley* decision, rather than the new amendments to the Code. *See In re Air Forwarding Systems, Inc.*, 176 B.R. 638 (Bankr.M.D.Fla.1995); *In re Arthur*

*F. Hazen & Co., Inc.*, 184 B.R. 233 (Bankr. W.D.Pa.1995); and *In re Blevins Electric, Inc.*, 185 B.R. 250 (Bankr.E.D.Tenn.1995).

Accordingly, the plaintiff may recover transfers paid for the benefit of the Thurmans within one year prior to the petition date.

*E. Insiders received more than they would if the transfer had not been made and a distribution was made under the provision of the code*

Debtor's payments to Sun Bank reduced the debt owed by the Thurmans by $12,-898.23. (Defendant Thurman Ex. 1). The Thurmans were insiders of the debtor corporation. Debtor's liabilities at the time of its petition totalled $257,211.29. Assets of the estate were valued at $34,620. (Plaintiff Ex. 6).

The Thurmans benefitted by having their debt to Sun Bank reduced by debtor's payments. Thus, the Court finds that the Thurmans received considerably more than they would have if the transfers had not been made and a distribution was made under the Code.

Based on the foregoing analysis, the Court finds that plaintiff has met his burden of proving all the elements required for avoidance of preferential transfers pursuant to 11 U.S.C. § 547(b).

*II. Affirmative Defenses Asserted Under 11 U.S.C. § 547(c)*

Having determined that the transfers are otherwise avoidable by the trustee pursuant to 11 U.S.C. § 547(b), the Court must now evaluate the affirmative defenses asserted by the defendant Sun Bank, and third party intervenor, the Thurman Estate.

Defendant Sun Bank initially raises several affirmative defenses which are not based on § 547. Sun Bank first alleges that it was improperly served under Rule 7004. The Court finds that service was proper.

Sun Bank next asserts that the complaint failed to state a cause of action upon which relief can be granted. The Court finds that the complaint adequately stated a cause of action for recovery of fraudulent or preferential transfers.

█ Third, Sun Bank argues that any transfers made more than ninety days preceding the filing of the petition of this adversary are nonavoidable. As already discussed, the Eleventh Circuit Court of Appeals has determined that payments (transfers) to non-insider creditors that benefit insider creditors extends the preference period from ninety days to one year prior to the petition date. *In re Wesley Industries, Inc.*, 30 F.3d 1438 (1995). In this case, debtor's payments to Sun Bank benefitted the Thurmans who were insiders. Thus, the preference recovery period is extended to include transfers made within one year prior to the petition date.

*A. Transfers were not made in the ordinary course of business*

Essentially, Sun Bank and the Thurman Estate assert two affirmative defenses available under 11 U.S.C. § 547(c). Section 547(c)(2) provides:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms .... 

11 U.S.C. § 547(c)(2).

█ The defendants bear the burden of proving all elements of § 547(c)(2) by a preponderance of the evidence. *In re Braniff, Inc.*, 154 B.R. 773 (Bankr.M.D.Fla.1993). In reviewing this defense, courts have held that the "ordinary course of business exception to the trustee's avoiding powers should be narrowly interpreted." *Id.* at 780. The factors to consider in determining whether transfers are protected under § 547(c)(2) are: "(1) the prior course of dealing between the parties; (2) the amount of the payments;

(3) the timing of the payments; and (4) the circumstances surrounding the payments." *Id.*

Other courts dealing with this section have held that it requires the application of an objective test "under which the Court looks to the course of dealing between the parties and the common practice in the industry." *In re Grove Peacock Plaza, Ltd.,* 142 B.R. 506, 517 (Bankr.S.D.Fla.1992). In any application, the Court must look at the original transaction which created the debt. *Id.* at 518.

Defendants first assert that the transfers meet the ordinary course of business exception because the payments were made for a debt incurred by the debtor in the ordinary course of its business with Sun Bank. Defendants rely on a case from the Fourth Circuit Court of Appeals in which a triparte lending relationship was held to be in the ordinary course of business. *See In re Jeffrey Bigelow Design Group, Inc.,* 956 F.2d 479 (1992). In that case, the parties had been involved in the lending relationship for two years prior to the bankruptcy filing. Although the court admitted that the relationship was not "commonplace," it held that the parties had established this practice as a course of business. *Id.*

In this case, however, the debtor had established four other loans with Sun Bank in its own name. The line of credit established by the Thurmans and repaid by the debtor was considerably different from any of the other loans between Sun Bank and the debtor. Section 547(c)(2) requires that the transfers be made in payment of a debt incurred by the debtor in the normal course of business between the *debtor* and *Sun Bank.* Only the payments on loans 59, 75, and 91 would qualify for this exception. This Court finds that the line of credit maintained by the Thurmans (loan 26) was not in the ordinary course of business between the debtor and Sun Bank.

Secondly, the defendants argue that the transfers were made in the ordinary course of business or financial affairs of the debtor and Sun Bank. Under this prong of § 547(c)(2), courts have routinely looked for evidence of late payments or unusual debt collection practices which would indicate that the payments were not in the ordinary course of business. *In re Braniff, Inc.,* 154 B.R. 773 (Bankr.M.D.Fla.1993). *See In re Craig Oil Co.,* 785 F.2d 1563 (11th Cir.1986). In this case, the payments on loan 26 were payable on demand. (Defendant Ex. 1–5). No evidence was presented to indicate when the payments were due or that the payments were paid on time.

Again, the payments on loans 59, 75, and 91 were in the ordinary course of business or financial affairs between the debtor and Sun Bank because the debtor was directly liable for the repayment of those loans. The payments on loan 26, however, do not meet this exception. On this loan, the collection process was unusual because a third party was directly liable for repayment, but the loan was repaid by the debtor. This lending relationship was not in the ordinary course of business between the debtor and Sun Bank.

Defendants argue that the triparte arrangement is not unusual because the debtor received the benefit of the money, thus making the debtor liable for the repayment. The Court admits that triparte lending arrangements are not uncommon. However, this arrangement was inconsistent with the other loans maintained by the debtor in its own name and was not in the ordinary course of business or financial affairs between debtor and Sun Bank.

Finally, the defendants argue that the transfers by debtor to Sun Bank were made under ordinary business terms. Defendants failed to produce any evidence of "industry norms" to prove that the triparte relationship between debtor, the Thurmans, and Sun Bank was within this exception. One court has held that for purposes of this subsection, the court must examine the "circumstances of the business transactions between the parties, not the standard in the industry." *In re Braniff,* 154 B.R. 773, 780 (Bankr.M.D.Fla.1993).

As stated earlier, this Court finds that the triparte lending relationship between the

parties was unusual when compared to the other loans maintained by the debtor with Sun Bank. Thus, with the exception of the three payments made on loans 59, 75, and 91, the transfers in question were not made in accordance with the regular practice of the parties.

The Court finds that defendants have proven a legitimate defense to the plaintiff's avoidance action with regards to the payments made on loans 59, 75, and 91. Those payments are not avoidable as preferential transfers. The payments made by the debtor to Sun Bank on behalf of the Thurmans, however, are not protected by § 547(c)(2). The plaintiff may avoid those payments as preferences pursuant to 11 U.S.C. § 547(b).

*B.  New Value advanced to debtor did not remain unpaid or unsecured*

Defendants also assert an affirmative defense based on 11 U.S.C. § 547(c)(4). Subsection (c)(4) provides:

(c) The trustee may not avoid under this section a transfer—

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor; ...

11 U.S.C. § 547(c)(4).

Section 547(a)(2) defines "new value" as:

money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation; ....

11 U.S.C. § 547(a)(2).

The Eleventh Circuit Court of Appeals has specified that a transfer must meet the following requirements to be protected under § 547(c)(4):

(1) the creditor must have extended the new value after receiving the challenged payments,

(2) the new value must have been unsecured, and

(3) the new value must remain unpaid....

*In re Jet Florida System, Inc.,* 841 F.2d 1082, 1083 (11th Cir.1988).

The Eleventh Circuit stated that the purpose of (c)(4) was to uphold the policy considerations intended by Congress. "The first objective is to encourage creditors to continue extending credit to financially troubled entities while discouraging a panic-stricken race to the courthouse." *Id.* at 1083. "Another related objective of this section is to promote equality of treatment among creditors." *Id.*

*C.  Defendant extended new value after receiving challenged transfers*

When a creditor extends new value to a debtor after receiving a preferential transfer, the new value in effect "returns the preference to the estate." *In re Formed Tubes, Inc.,* 46 B.R. 645, 647 (Bankr. E.D.Mich.1985). To qualify as new value, however, the Eleventh Circuit has held that advances must provide the debtor with a material benefit. *In re Jet Florida System, Inc.,* 841 F.2d 1082, 1084 (11th Cir.1988).

In this case, Sun Bank extended new value to the debtor through a $10,000 advance on loan 26 on January 13, 1994. (Defendant Thurman Ex. 1). This advance came subsequent to the debtor's transfers to Sun Bank in the year prior to the petition date. (Defendant Thurman Ex. 1). The advance provided a material benefit to the debtor because it allowed the debtor to fund its operating capital account. Thus, the Court finds that Sun Bank extended new value to debtor after it received the challenged transfer payments.

*D.  The new value was unsecured*

The value extended by Sun Bank was based on a line of credit established by the Thurmans. This line of credit was estab-

lished and renewed as an unsecured credit facility. (Defendant Ex. 1–5). The $10,000 advance by Sun Bank to debtor on January 13, 1994 was an extension of the original line of credit on loan 26. Thus, this advance was also unsecured.

### E. New Value remained unpaid as of the petition date

The Eleventh Circuit has held that § 547(c)(4) requires that the new value remain unpaid as of the petition date, rather than the date the court adjudicates a preference action. *In re Braniff, Inc.*, 154 B.R. 773, 784 (Bankr.M.D.Fla.1993). *See In re Jet Florida System, Inc.*, 841 F.2d 1082 (11th Cir.1988). Plaintiff contends, and the Thurman estate admits, that Sun Bank received payment for the new advance through the Thurman estate. The transaction records for loan 26, however, indicate that as of the date of the petition, the $10,000 advance remained unpaid. (Defendant Thurman Ex. 1). Thus, the fact that Sun Bank received payment of the new value subsequent to the petition date is irrelevant to this discussion. The Court finds that the value remained unpaid as of the petition date.

### F. Sun Bank entitled to off set amount of "new value"

The Court has determined that Sun Bank advanced new value to the debtor pursuant to § 547(c)(4). Thus, Sun Bank "is entitled to set off the amount of the 'new value' which remains unpaid on the date of the petition against the amount which the creditor is required to return to the trustee on account of the preferential transfer it received." *In re Braniff, Inc.*, 154 B.R. 773, 784 (Bankr. M.D.Fla.1993). *See In re Ascot Mortg., Inc.*, 153 B.R. 1002, 1019 (Bankr.N.D.Ga.1993).

The plaintiff claims that preferential transfers made by debtor to Sun Bank total $16,772.68. (Plaintiff Brief at 1). The Court has found, however, that the transfers made on loans 59, 75, and 91 are protected by the ordinary course of business exception found in § 547(c)(2). These transfers total $3,874.45. (Defendant Ex. 7).

Additionally, the Court has determined that pursuant to § 547(C)(4), Sun Bank is entitled to off set the amount of the new value against the preferential transfers made on loan 26. The value of the new advance was $10,000. (Defendant Ex. 7). Accordingly, the plaintiff may not avoid $13,874.45 of the transfers.

Plaintiff argues that the new value defense is not available to Sun Bank because the new value was removed from the estate by insiders of the debtor. *See In re Formed Tubes, Inc.*, 46 B.R. 645 (Bankr.1985). Sandra Marshall, David Marshall, and Beverly Thurman, all insiders, received salaries from the debtor after the new value was advanced by Sun Bank. (Plaintiff Brief Ex. 2; Plaintiff Ex. 7). Combined, these payments totalled $5,680. The Court, however, finds that this argument is based on case law which is not controlling in this District. Although the Eighth Circuit Court of Appeals endorses this argument, this Court finds it does not further the policy considerations suggested by the Eleventh Circuit.

In this case, the money advanced by Sun Bank was used, in part, to pay insider creditors. Sun Bank is entitled to off set the amount of its new value that remained unpaid as of the petition date. If plaintiff is allowed to avoid the portion of the new advance paid to insiders because money was removed from the estate, the insider creditors would be placed in a better position than Sun Bank. Such an arrangement would circumvent the Court's ability to maintain the equality of treatment of creditors. *See In re Braniff, Inc.*, 154 B.R. 773 (Bankr.M.D.Fla. 1993).

### III. Fraudulent transfers pursuant to 11 U.S.C. § 548

Plaintiff also asserts that the transfers from debtor to Sun Bank are avoidable as fraudulent transfers pursuant to 11 U.S.C. § 548. In relevant part, § 548 states:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the

petition, if the debtor voluntarily or involuntarily—

.    .    .    .    .

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

.    .    .    .    .

(d)(2) In this section—

(A) "value" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor; . . .

11 U.S.C. § 548.

■ The plaintiff bears the burden of proving the lack of reasonably equivalent value. *In re Chase & Sanborn Corp.,* 904 F.2d 588, 593–94 (11th Cir.1990). The Eleventh Circuit Court of Appeals has held that section 548 "does not authorize voiding a transfer which 'confers an economic benefit upon the debtor,' either directly or indirectly." *In re Rodriguez,* 895 F.2d 725, 727 (11th Cir.1990).

This Court has previously held that where a "tripartite relationship exists, but analysis of the facts demonstrates that the debtor nonetheless receives reasonably equivalent value, case law seems clear to the effect that, 'a debtor may sometimes receive "fair" consideration even though the consideration given for his property or obligation goes initially to a third person.'" *In re Holly Hill Medical Center, Inc.,* 44 B.R. 253, 255 (Bankr. M.D.Fla.1986) (quoting *Rubin v. Manufac-*

*turers Hanover Trust Co.,* 661 F.2d 979 (2d Cir.1981)). This Court has also held that "where interest payments were made by the debtor on a loan to a third party, which loan proceeds were then re-loaned to the debtor, the debtor has then received reasonably equivalent value." *In re Computer Universe, Inc.,* 58 B.R. 28, 31 (Bankr.M.D.Fla.1984).

Plaintiff relies on this Court's decision in *In re Computer Universe, Inc.,* to argue that the payment of a shareholder debt by a corporation is generally avoidable by the trustee. *In re Computer Universe, Inc.,* 58 B.R. 28, 30 (Bankr.M.D.Fla.1986). Plaintiff, however, overlooks the Court's endorsement of the "indirect benefit" rule which provides an exception to this argument. *Id.* at 30–31.

■ Plaintiff admits that the debtor received an indirect benefit from the money advanced by Sun Bank. (Plaintiff Brief at 19). The Court agrees that the debtor did in fact benefit from the advances. The debtor received the money directly, and had use of that money to pay employee salaries, purchase inventory, pay for advertising, and meet other expenses. Thus, the Court finds that the indirect benefit rule applies and that the debtor did receive reasonably equivalent value for the payments it made to Sun Bank.

Plaintiff also argues that any benefit received by the debtor was removed from the estate by insiders because the debtor used advances from Sun Bank to pay insider salaries. This Court has previously held, however, that

"[t]he criterion for whether a debtor received reasonably equivalent value cannot in any instance be whether the debtor used sound judgment in exploiting what it received to the best advantage.... Whether borrowed money is used brilliantly or wasted by the recipient does not inflate or reduce its value from the lender's standpoint...."

*In re Holly Hill Medical Center, Inc.,* 44 B.R. 253, 256 (Bankr.M.D.Fla.1984).

As previously noted, the debtor was insolvent at the time of the transfers. Thus, the plaintiff has failed to meet his burden of proving that the transfers were fraudulent pursuant to § 548(a)(2)(A) and (B).

After an evaluation of the plaintiff's claims under §§ 547 and 548, the Court concludes as follows:

1. The transfers made by debtor to Sun Bank on loans 59, 76, and 91 are not avoidable because they are protected by the ordinary course of business exception in § 547(c)(2)(A).

2. The transfers made by debtor to Sun Bank on loan 26 are avoidable as preferential transfers pursuant to § 547.

3. Sun Bank is entitled to off set the value of its $10,000 new advance against the avoidable transfers.

### IV. Defendant Sun Bank is the initial transferee of the avoidable preferences

Section 550 of the Bankruptcy Code provides that if the trustee is entitled to recover an avoidable transfer under § 547 or 548, he may recover from

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee....

11 U.S.C. § 550(a)(1)–(2).

 In *In re Chase & Sanborn Corporation*, 904 F.2d 588 (11th Cir.1990), the Eleventh Circuit endorsed what it called the "conduit test" for determining whether a bank receiving avoidable transfers from a debtor is indeed the initial transferee. This test focuses on whether the bank actually gained control over the funds, or whether the bank simply acted as a "conduit" for the party who was directly responsible for paying the debt or overseeing the funds. *Id.* at 598.

 In this case, defendant Sun Bank was the initial transferee of the funds paid by debtor. Sun Bank received payment directly from the debtor and credited them toward payment of the line of credit established by the Thurmans. The Thurmans had no active participation in the collection of the funds and did not instruct Sun Bank in its collection procedures.

The Court finds that for purposes of avoiding transfers under § 547, the trustee can recover the value of the transfers from Sun Bank because Sun Bank was the initial transferee of the payments.

### V. Sun Bank's Crossclaim against The Thurman Estate

Defendant Sun Bank argues that pursuant to § 550, the Thurman Estate has been substituted as the initial transferee by virtue of its intervention in this action. Thus, Sun Bank asserts that if it is liable for the avoidable transfers, it can transfer that liability to the Thurman Estate. Sun Bank further argues that by its intervention in this case, the Thurman Estate has admitted that it has no defense to Sun Bank's claim. Finally, Sun Bank states that the Thurman Estate is responsible for repayment of the transfers by virtue of a claim filed by Sun Bank against the probate estate.

 The Thurman estate asserts that this Court lacks jurisdiction to determine that Sun Bank's claim filed in the probate court is allowable. The Eleventh Circuit has stated that it is inappropriate for Bankruptcy Courts to adjudicate issues better suited for specialized states courts, such as family law issues that should be decided under state law. *Carver v. Carver*, 954 F.2d 1573 (11th Cir.1992). This idea has been extended to prevent Bankruptcy Courts from deciding issues which should be decided by a state probate court. "Probate law, like family law ... is a specialized area of practice in which those special courts have developed substantial expertise, and as such are entitled to deference in litigation involving these issues." *In re DiMartino*, 144 B.R. 225, 226 (Bankr. D.R.I.1992).

This Court agrees that the allowability of Sun Bank's claim against the Thurman Estate would be best addressed by the probate court. Although this Court has jurisdiction to adjudicate issues arising under title 11 of the United States Code, it finds in this case that the specialized laws of the probate court should be utilized to determine the allowability of Sun Bank's claim in the probate estate. 28 U.S.C. § 157.

### VI. Plaintiff's Motion to Strike Defendant Thurman's Post Trial Memorandum

Finally, the Court must comment on the Plaintiff's motion to strike the post trial memorandum of The Thurman Estate. The Court heard the merits of the motion by telephone conference on October 11, 1995.

Counsel for the Thurman Estate was aware that this Court requires the consent of all parties to extend the date for filing post trial papers. The post-trial memorandum of the Thurman Estate was untimely. At the hearing, however, Plaintiff's counsel indicated that he did not believe counsel for the Thurman Estate would have used the memoranda of the other parties when preparing his own. Thus, the Court finds that there has been no prejudice to the plaintiff or defendant Sun Bank. The motion to strike is denied.

### VII. CONCLUSION:

The transfers made by debtor to Sun Bank on loans 59, 76, and 91 are not avoidable as preferential transfers pursuant to 11 U.S.C. § 547 (totalling $3,874.45). The transfers made by debtor to Sun Bank on loan 26 are avoidable. Sun Bank is entitled to off set the amount of new value it extended to debtor under loan 26 ($10,000). Thus, the plaintiff may avoid $2,898.23 as preferential transfers pursuant to 11 U.S.C. § 547. Plaintiff's motion to strike the post trial memorandum of defendant Thurman Estate is denied. The Court will enter a separate judgment consistent with these findings of fact and conclusions of law.

### AMENDED JUDGMENT

This proceeding came before the Court upon the complaint to recover fraudulent or preferential transfers made within one year of the petition date pursuant to 11 U.S.C. §§ 547 and 548. Upon findings of fact and conclusions of law separately entered, it is

ORDERED:

1. In regards to transfers made on loans 59, 75, and 91, judgment is entered in favor of defendant Sun Bank and against the plaintiff. Plaintiff may not avoid these transfers pursuant to 11 U.S.C. § 547.

2. In regards to transfers made on loan 26, judgment is entered in favor of the plaintiff and against defendant Sun Bank. Plaintiff may avoid these transfers in the amount of $12,898.23 pursuant to 11 U.S.C. § 547.

3. Defendant Sun Bank is entitled to off set the amount of new value it extended to debtor in the amount of $10,000.

4. Plaintiff may not avoid any transfers pursuant to 11 U.S.C. § 548.

5. The Court abstains from determining the allowability of defendant Sun Bank's claim against the Estate of Beverly S. Thurman, leaving the probate court to make any decision.

6. Plaintiff's motion to strike the post trial memorandum of the Estate of Beverly S. Thurman is denied.