will be entered in accordance with this Memorandum Opinion.

In re L. BEE FURNITURE
CO., INC., Debtor.

Charles W. GRANT, Trustee, Plaintiff,

v.

SUNTRUST BANK, CENTRAL
FLORIDA, N.A.,
Defendant.

Bankruptcy No. 96–1017–BKC–3P7.
Adv. No. 96–266.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Aug. 12, 1996.

Ronald Bergwerk, Jacksonville, Florida, for Plaintiff.

Kelton M. First, Jacksonville, Florida, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding came before the Court upon Defendant's Motion for Summary Judgment. Upon the pleadings, memorandums of law, supporting affidavit and arguments presented at the hearing on July 17, 1996, the Court enters the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. On October 13, 1994, L. Bee Furniture Company (Debtor) borrowed $150,000 from SunTrust Bank, Central Florida, N.A. (Defendant), evidenced by a promissory note. (Adv.Rec. 11, Ex. A–B). The terms of the Note provide that Debtor is to repay Defendant the $150,000 loan in fifty-nine (59) monthly installments of $3,080, commencing November 13, 1994. (*Id.*). The Note further provides that payment was due on the thirteenth (13th) of each month, and a five percent (5%) late charge is assessed against each payment received after the due date. (*Id.*).

2. In the affidavit supporting the motion for summary judgment, Defendant states it is the Bank's practice to send invoices to business borrowers ten (10) days before monthly payments are due, and to send past due notices to borrower ten (10) days after payment is due. (Adv.Rec. 11). Debtor established the following payment record with Defendant:

| Due Date | Payment Date | Days Late | Payment Amount | Late Charge |
|---|---|---|---|---|
| 11–13–94 | 11–30–94 | 17 | $ 3,080.00 | —— |
| 12–13–94 | 12–16–94 | 3 | $ 3,234.00 | $154.00 |
| 1–13–95 | 1–19–94 | 6 | $ 3,080.00 | —— |
| 2–13–95 | 3–2–95 | 17 | $ 3,234.00 | $154.00 |
| 3–13–95 | 4–4–95 | 22 | $ 3,080.00 | —— |
| 4–13–95 | 5–10–95 | 27 | $ 3,388.00 | $308.00 |
| 5–13–95 | 6–7–95 | 25 | $ 3,050.00 | —— |
| 6–13–95 | 6–29–95 | 16 | $ 3,234.00 | $124.00 |
| 7–13–95 | 8–9–95 | 27 | $ 3,264.00 | $184.00 |
| 8–13–95 | 9–7–95 | 25 | $ 3,358.00 | $278.00 |
| 9–13–95 | 10–6–95 | 23 | $ 3,264.00 | $154.00 |
| 10–13–95 | 11–6–95 | 24 | $ 3,202.50 | $152.50 |
| 11–13–95 | 12–7–95 | 24 | $ 3,234.00 | $154.00 |
| 12–13–95 | 1–9–96 | 27 | $ 3,234.00 | $154.00 |
| 1–13–96 | 2–8–96 | 26 | $ 3,234.00 | $154.00 |
| 2–13–96 | 2–21–96 | Payoff | $119,594.28 | —— |

(Adv.Rec. 11, Ex. "B").

3. On February 23, 1996, Debtor filed for protection under Chapter 7 of the Bankruptcy Code, and Charles W. Grant was appointed Chapter 7 Trustee (Plaintiff). (Main Case Rec. 1). On May 7, 1996, the Plaintiff filed this adversary proceeding seeking to avoid three payments totalling $9,702.00. (Adv. Rec. 1). The three transfers that the Plaintiff seeks to avoid are:

| Due Date | Payment Date | Days Late | Payment Amount | Late Charge |
|----------|--------------|-----------|----------------|-------------|
| 11–13–95 | 12–7–95 | 24 | $3,234.00 | $154.00 |
| 12–13–95 | 1–9–96 | 27 | $3,234.00 | $154.00 |
| 1–13–96 | 2–8–96 | 26 | $3,234.00 | $154.00 |

(Adv.Rec. 1).

4. The Plaintiff, in the complaint, argues that the transfers were avoidable pursuant to 11 U.S.C. § 547(b). (*Id.*). Defendant, in its answer, asserts affirmative defenses alleging that the transfers sought to be avoided were made in the ordinary course of business between the Debtor and Defendant pursuant to 11 U.S.C. § 547(c)(2). (Adv.Rec. 4).

5. On July 15, 1996, Defendant moved for summary judgment pursuant to Bankruptcy Rule 7056. (Adv.Rec. 5, 7). Defendant concedes that the requirements of subsection 547(b) are satisfied, but argues that the transfers sought to be avoided were made in the ordinary course of business under subsection 547(c)(2). (*Id.* at 3–8).

6. Plaintiff urges the Court to deny Defendant's motion for summary judgment because there are genuine issues of material fact and movant is not entitled to summary judgment as a matter of law. (Adv.Rec. 6). Alternatively, Plaintiff asserts that summary judgment should be entered in his favor. (*Id.*).

7. The sole issue in this proceeding is whether the payments made within the preference period were made within the ordinary course of business exception of subsection 547(c)(2). Plaintiff contends that they are not. Defendant asserts that the transfers were made in the ordinary course of business, and thus, are within subsection 547(c)(2) exception to the preferential transfers.

## CONCLUSIONS OF LAW

■ Defendant contends that the Court should enter summary judgment in its favor because the transfers sought to be avoided are within the ordinary course of business exception of subsection 547(c)(2) of the Bankruptcy Code. (Adv.Rec. 5). A motion for summary judgment is granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56; Fed.R.Bankr.P. 7056. The burden of showing that there are no genuine issues of material fact falls on the party moving for summary judgment. *Macks v. United States of America (In re Macks)*, 167 B.R. 254, 256 (Bankr.M.D.Fla.1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). After the moving party has met its burden, the party opposing a Motion for Summary Judgment must make a sufficient showing establishing the existence of an essential element of that party's case on which the party bears the burden of proof at trial. *Id.*

■ This sole issue in this proceeding is whether the transfers sought to be avoided were made within the ordinary course of business exception under subsection 547(c)(2) of the Bankruptcy Code. Subsection 547(c)(2) provides that:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms[.]

11 U.S.C. § 547(c)(2) (1994).

■ After an examination of the pleadings, memoranda and affidavit, the Court

concludes that there are triable issues of fact, and the Court's record is insufficient to grant Defendant's motion for summary judgment as a matter of law pursuant to subsection 547(c)(2). This Court has employed the following factors to determine whether transfers were made within the ordinary course of business exception under subsection 547(c)(2): (1) the prior course of dealings between the parties, (2) the amount of the payments, (3) the timing of the payments, and (4) the circumstances surrounding the payments. *Grant v. Sun Bank/North Central Florida, et al. (In re Thurman Construction, Inc.)*, 189 B.R. 1004, 1011–12 (Bankr.M.D.Fla.1995) (citing *Braniff v. Sundstrand Data Control, Inc. (In re Braniff, Inc.)*, 154 B.R. 773, 780 (Bankr.M.D.Fla. 1993)). The creditor has the burden of proving that the requirements for the ordinary business exception have been satisfied. *Thurman*, 189 B.R. at 1011 (citations omitted). The standard of proof is preponderance of the evidence. *Id.* Subsection 547(c)(2) is narrowly construed. *Id.*

From the outset, the Plaintiff and Defendant disagree on the proper construction of subsection 547(c)(2). The Plaintiff argues that subparagraphs "A" and "B" of 547(c)(2) should be analyzed subjectively, applying the factors outlined above, while subparagraph "C" of 547(c)(2) should be analyzed objectively by looking at the industry norms. (Adv. Rec. 6). Conversely, Defendant argues that subsection 547(c)(2), in its entirety, should analyzed subjectively, looking only to the Debtor and Defendant's prior dealings with each other, not objectively, examining industry norms. (Adv.Rec. 5).

The courts in this district, including this Court, have applied the above four factors to subsection 547(c)(2) on a whole. *See, e.g., Thurman*, 189 B.R. at 1012; *Braniff*, 154 B.R. at 780; *Hyman v. Stone Lumber Co. (In re Winter Haven Truss Co.)*, 154 B.R. 592, 594 (Bankr.M.D.Fla.1993) (citations omitted); *Florida Steel Corp. v. Stober (In re Industrial Supply Corp.)*, 127 B.R. 62, 65 (Bankr.M.D.Fla.1991) (citations omitted). In *Thurman*, this Court, addressing subparagraph "C" of 547(c)(2), indicated that evidence of "industry norms" was not offered to prove that transfers were "made according to ordinary business terms." *Thurman*, 189 B.R. at 1012. However, the Court ultimately concluded that an examination of the prior dealings between the parties was sufficient in deciding whether transfers were made "according to ordinary business terms." *Id.*

The Court now turns to the four factors outlined in *Thurman*. The first factor is the prior course of dealings between the parties. *Thurman*, 189 B.R. at 1011. Both the Plaintiff and Defendant disagree as to whether the prior course of dealings between the parties made transfers fall within the ordinary course of business exception under 547(c)(2). Based on the affidavit and attached exhibits submitted by Defendant, there is a history of Debtor making each payment of the loan after the due date. (Adv.Rec. 11). However, the Court is unable to determine the prior course of dealings between the parties regarding the treatment of the late payments. The affidavit simply states Defendant's practices with respect to commercial borrowers, and does not address specifically the relationship between Defendant and Debtor. (Adv.Rec. 11).

The second factor examines the amount of each payment before and during the preference period. *Thurman*, 189 B.R. at 1011–12. Defendant argues that the amount of each payment before the preference period is relatively the same as the amount of each payment during the preference period. (Adv. Rec. 5). Defendant further argues that the late charges were added both to monthly installments before the preference period and monthly installments during the preference period. (*Id.*) Plaintiff, however, argues that payments before the preference period are different from payments made during the preference period. (Adv.Rec. 6). Defendant's affidavit and exhibits show that the amount of payment, including late charges, before the preference period varied, while the contested payments during the preference period were the same. (Adv.Rec. 5).

The third factor deals with the timing of each payment. *Thurman*, 189 B.R. at 1012. The Eleventh Circuit has held that "lateness" is an important factor in deciding whether payments should be protected by the ordinary course of business exception. *Marathon Oil Co. v. Flatau (In re Craig Oil*

*Company)*, 785 F.2d 1563, 1567 (11th Cir. 1986). There is a presumption that late payments are outside the ordinary course of business, but such presumption may be overcome by a showing that late payments were in the ordinary course of the parties' business. *Braniff,* 154 B.R. at 780–81. The Plaintiff argues that Defendant has not overcome the presumption that late payments are outside the ordinary course of business. (Adv.Rec. 6). The Court lacks sufficient facts to determine whether Debtor's late payments became part of the ordinary course of business between Defendant and Debtor.

■ With the fourth and final factor, the Court examines the circumstances surrounding the payments. *Thurman,* 189 B.R. at 1012. Subsection 547(c)(2) protects those payments that *do not result from* "unusual" or "extraordinary" debt collection practices. *Craig Oil Co.,* 785 F.2d at 1567. The Plaintiff argues that payments made during the preference period were prompted by unusual or extraordinary collection efforts. (Adv. Rec. 6). Defendant, however, contends it followed its routine collection efforts over the entire life of the loan. (Adv.Rec. 5). Whether Defendant conducted extraordinary collection practice to obtain payments on its loan within the preference period creates a triable issue of fact.

The Court concludes that there are genuine issues of material fact, especially regarding the third and fourth factors outlined in *Thurman.* The affidavit and attached exhibits that Defendant submitted to the Court are insufficient to decide: (1) whether late payments by Debtor to Defendant were a part of the normal business relationship between the parties; and (2) whether Defendant conducted "unusual" or "extraordinary" collection activities within the preferential period. Therefore, for purposes of granting summary judgment, Defendant has failed meet its burden of establishing that there are no genuine issues of material fact and it is entitled to summary judgment as a matter of law under the ordinary course of business exception of subsection 547(c)(2).

## CONCLUSION

The motion for summary judgment is denied because the pleadings, answer, motions and affidavit show that there are genuine issues of material fact and movant is not entitled to summary judgment as a matter of law. Although the Plaintiff did not file a separate motion for summary judgment, to the extent that Plaintiff plead in the alternative that the Court should enter summary judgment in his favor, the Plaintiff's motion for summary judgment is denied. The Court will enter a separate order consistent with these findings of fact and conclusions of law.

### ORDER DENYING DEFENDANT'S AND TRUSTEE'S MOTIONS FOR SUMMARY JUDGMENT AND SCHEDULING TRIAL

This adversary proceeding came before the Court upon Defendant's Motion for Summary Judgment. Upon findings of fact and conclusions of law separately entered, it is,

**ORDERED:**

1. Defendant's motion for summary judgment is denied.

2. Plaintiff's motion for summary judgment is denied.

3. The Clerk's Office will separately notice the trial scheduled for October 15, 1996 at 1:00 p.m. in Room 240, United States Courthouse and Post Office Building, 311 West Monroe Street, Jacksonville, Florida.