In re L. BEE FURNITURE
CO., INC., Debtor.

Charles W. GRANT, Trustee, Plaintiff,

v.

HAMMOND HEATING & AIR
CONDITIONING, INC.,
Defendant.

Bankruptcy No. 96–1017–BKC–3P7.
Adv. No. 96–277.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Jan. 22, 1997.

Ronald Bergwerk, Jacksonville, FL, for Plaintiff.

Edward Booth, Jacksonville, FL, for Defendant.

**FINDINGS OF FACT AND
CONCLUSIONS OF
LAW**

GEORGE, L. PROCTOR, Bankruptcy Judge.

This proceeding came before the Court upon a complaint to recover a preferential transfer pursuant to 11 U.S.C. § 547(b). Upon the evidence presented at the trial held on November 13, 1996, the Court enters the

following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. On February 23, 1996, L. Bee Furniture, Co., Inc. (Debtor) filed for relief under Chapter 7 of the Bankruptcy Code. (Doc. 1). Charles W. Grant, Chapter 7 Trustee (Plaintiff), filed this adversary proceeding on May 8, 1996 to avoid a preferential transfer in the amount $2,000. (Doc. 50).

2. Hammond Heating & Air Conditioning, Inc. (Defendant) is a small family controlled corporation, established over thirty-six (36) years ago in Jacksonville, Florida. (Adv.Rec. 9). Defendant provided the Debtor with heating and air conditioning services over the past ten years. (Id.).

3. On May 19, 1995, Defendant provided Debtor with an invoice for materials and services totalling $4,286. (Adv.Rec. 9). On November 7, 1995, Debtor made a partial payment in the amount of $1,430. (Defendant Ex. 1). On December 28, 1995, Debtor made another partial payment of $2,000 within the ninety-day preference period. (Id.). Defendant asserts that the $2,000 payment is protected by the ordinary course of business exception under subsection 547(c)(2) of the Bankruptcy Code. (Id.).

4. The following is the payment history between the parties from 1986 to 1995:

| Invoice # | Amount | Billing Date | Payment Date | Months Btwn Invoice & Last Payment Date |
|---|---|---|---|---|
| 1900 | $4,031 | 08/30/86 | 10/16/86 | 1.5 |
| 3001 | $2,739.45 | 08/07/87 | 09/21/87 (1st Pmt, $1,400) | |
| | | | 10/15/87 (2nd Pmt, $1,339.45) | 2 |
| 3200 | $3,490 | 09/22/87 | 05/18/88 | 8 |
| 4214 | $3,403.70 | 04/29/88 | 08/17/88 | 4 |
| 6265 | $1,581 | 07/10/89 | 01/03/90 | 6 |
| 8499 | $3,876 | 07/24/90 | 11/29/90 (1st Pmt, $1,000) | |
| | | | 01/09/91 (2nd Pmt, $1,000) | |
| | | | 05/06/91 (3rd Pmt, $876) | |
| | | | 07/09/91 (Final Pmt, $1,000) | 11 |
| 5981 | $3,700 | 03/24/94 | 06/14/94 (1st Pmt, $1,900) | |
| | | | 08/23/94 (Final Pmt, $1,800) | 5 |
| 6051 | $4,286 | 05/19/95 | 11/07/95 (1st Pmt, $1,430) | |
| | | | 12/28/95 (**2nd Pmt, $2,000**) | 7 |
| 5737 | $63.50 | 07/25/95 | 11/07/95 | 3.5 |
| 5756 | $791 | 08/02/95 | 11/07/95 | 3 |
| 5827 | $68 | 08/22/95 | 11/07/95 | 2.5 |

(Defendant Ex. 1).

5. Defendant's representative, Mr. Hammond, testified that it was within the parties' general practice to wait from two months to one year to receive payment from Debtor. Over the life of the parties' relationship, Mr. Hammond typically called Mr. Moskovitz, President of L. Bee Furniture, and asked for payments that became due. Mr. Hammond also testified that his son routinely visited L. Bee Furniture Store and picked up payments on various invoices, rather than having Debtor mail the checks. With respect to the disputed payment, Mr. Hammond admitted calling Mr. Moskovitz for the payment, and sending his son to the furniture store to pickup the $2,000 check. He also testified that this was a normal business practice between the parties.

## CONCLUSIONS OF LAW

The sole issue is whether the transfer sought to be avoided is protected by the ordinary course of business exception under subsection 547(c)(2) of the Bankruptcy code. Subsection 547(c)(2) provides that:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms[.]

11 U.S.C. § 547(c)(2) (1994). The Eleventh Circuit Court of Appeals has highlighted that the Congressional intent of subsection 547(c)(2) is "to leave undisturbed normal financial relations, because [such an exception] does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditor during the debtor's slide into bankruptcy." *Marathon Oil Co. v. Flatau (In re Craig Oil Co.),* 785 F.2d 1563, 1566 (11th Cir.1986) (citing H.R.Rep. No. 595, 95th Cong. 1st Sess. 373–74 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6329) (alterations in original). The creditor has the burden of proving that the requirements for the ordinary business exception have been satisfied. *Grant v. Sun Bank/North Central Florida, et al. (In re Thurman Construction, Inc.),* 189 B.R. 1004, 1011–12 (Bankr. M.D.Fla.1995) (citing *Braniff v. Sundstrand Data Control, Inc. (In re Braniff, Inc.),* 154 B.R. 773, 780 (Bankr.M.D.Fla.1993)). The standard of proof is preponderance of the evidence, and subsection 547(c)(2) should be narrowly construed. *Id.*

**1. Payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee.**

■ The parties have agreed that subparagraph "A" of subsection 547(c)(2) is satisfied because the debt was incurred in the ordinary course of business between the Debtor and Defendant. Therefore, this Court must resolve whether subparagraphs "B" and "C" of subsection 547(c)(2) are also satisfied.

**2. Transfer was made in the ordinary course of business or financial affairs of the debtor and the transferee and trans-**

fer was made according to ordinary business terms.

This Court has held that subparagraphs "B" and "C" of 547(c)(2) should be analyzed subjectively, examining the relationship between the respective parties.[1] This Court has applied the following four factors to determine whether transfers are protected by the ordinary course of business exception: (1) the prior course of dealings between the parties, (2) the amount of the payments, (3) the timing of the payments, and (4) the circumstances surrounding the payments. *Id.* (citing *Thurman,* 189 B.R. at 1011–12).

**a. Prior Course of Dealing**

The first factor the Court considers is the prior course of dealing between the parties. Here, Mr. Hammond testified that it was within the parties' general practice to wait anywhere from two months to one year to receive payment from Debtor. Over the life of the parties' relationship, Mr. Hammond usually called Mr. Moskovitz, President of L. Bee, and asked for payments that were due. It was also normal for Mr. Hammond to send his son to L. Bee Furniture Store to retrieve a payment rather than allowing Debtor to place the check in the mail. With respect to the $2,000, Mr. Hammond admitted calling Mr. Moskovitz about the payment and sending his son to retrieve the check. Therefore, the $2,000 payment is consistent with how the parties have done business over the years.

**b. Amount of the Payment**

The second factor considered is the amount of the payments. Here, the payment of $2,000 is not an unusually large sum. Based on the parties' ten-year history, the payments ranged from $68 to $4,031. Therefore, the amount of this transfer is not unusually large.

**c. Timing of the Payment**

■ The third factor deals with the timing of each payment. The Eleventh Circuit has held that "lateness" is an important factor in deciding whether payments should be pro-

---

1. See *Grant v. SunTrust Bank (In re L. Bee Furniture),* 203 B.R. 778, 781–83 (Bankr.M.D.Fla. 1996) for a full discussion on adoption of the subjective analysis for subparagraphs "B" and "C."

tected by the ordinary course of business exception. *Craig Oil,* 785 F.2d at 1567. There is a presumption that late payments are outside the ordinary course of business, but such presumption may be overcome by a showing that late payments were in the ordinary course of the parties' business. *Braniff,* 154 B.R. at 780–81.

Here, Debtor generally paid Defendant anywhere from two months to almost a year after the invoice date. Therefore, Defendant overcame the presumption that the late payment is outside the ordinary course of business and can prove that the $2,000 was within the course of the parties' relationship.

### d. Circumstances Surrounding the Payment

Finally, with the fourth factor, the Court examines the circumstances surrounding the payments. Subsection 547(c)(2) protects those payments that do not result from "unusual" or "extraordinary" debt collection practices. *Craig Oil Co.,* 785 F.2d at 1567.

Here, Plaintiff argued that the Defendant made "unusual" and "extraordinary" collection efforts by making telephone contact with Debtor and asking for a payment, which were followed by physically picking-up the $2,000 check at the furniture store rather than allowing Debtor to mail the payment. Defendant, however, testified that it was normal to call the President of L. Bee and ask for payment on an invoice. It was also normal for Defendant to go to L. Bee Furniture Store and retrieve a check, rather than allowing the check to be placed in the mail. This was done over the course of the parties' relationship. Therefore, there is insufficient evidence to prove that Defendant used "unusual" or "extraordinary" collection efforts to receive the $2,000 payment.

### CONCLUSION

Defendant has proved by preponderance of the evidence that the requirements for the ordinary course of business exception have been satisfied, and that it is entitled to retain the preferential transfer totalling $2,000. After considering the prior course of dealing between the parties, the amount, timing and circumstances surrounding the $2,000 payment, the Court concludes that the payment was made in the ordinary course of business or financial affairs of Debtor and Defendant, and made according to ordinary business terms as between the respective parties.