**In re L. BEE FURNITURE CO., INC., Debtor.**

**Charles W. GRANT, Trustee, Plaintiff,**

**v.**

**SunTRUST BANK, CENTRAL FLORIDA, N.A., Defendant.**

**Bankruptcy No. 96–1017–BKC–3P7. Adv. No. 96–266.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Dec. 11, 1996.

Ronald Bergwerk, Jacksonville, FL, for Plaintiff.

Kelton M. Farris, Orlando, FL, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding came before the Court upon Complaint to recover preferential transfers pursuant to 11 U.S.C. § 547(b). Upon the evidence presented at the trial on October 15, 1996, the Court enters the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. On October 13, 1994, L. Bee Furniture Company (Debtor) borrowed $150,000 from SunTrust Bank, Central Florida, N.A. (Defendant), evidenced by a promissory note. (Defendant Ex. 1). The terms of the Note provided that Debtor was to repay Defendant the $150,000 loan in fifty-nine (59) monthly installments of $3,080, commencing November 13, 1994. (*Id.*). The Note further provided that payment was due on the thir-

teenth day (13th) of each month, and a five percent (5%) late charge was assessed against each payment received after the due date. (*Id.*).

2. On February 23, 1996, Debtor filed for protection under Chapter 7 of the Bankruptcy Code, and Charles W. Grant was appointed Chapter 7 Trustee (Plaintiff). (Main Case Rec. 1). On May 7, 1996, the Plaintiff filed this adversary proceeding seeking to avoid three payments totalling $9,702.00. (Adv. Rec. 1). The three transfers that the Plaintiff seeks to avoid are:

| Due Date | Payment Date | Days Late | Payment Amount | Late Charge |
|---|---|---|---|---|
| 11–13–95 | 12–7–95 | 24 | $3,234.00 | $154.00 |
| 12–13–95 | 1–9–96 | 27 | $3,234.00 | $154.00 |
| 1–13–96 | 2–8–96 | 26 | $3,234.00 | $154.00. |

(Adv.Rec.1).

3. The Plaintiff argues that the transfers were avoidable pursuant to 11 U.S.C. § 547(b). (*Id.*). Defendant's answer includes affirmative defenses alleging that the transfers sought to be avoided were made in the ordinary course of business between the Debtor and Defendant pursuant to 11 U.S.C. § 547(c)(2). (Adv.Rec.4).

4. On July 15, 1996, Defendant moved for summary judgment pursuant to Bankruptcy Rule 7056. (Adv.Rec. 5, 7). A hearing was held on July 17, 1996, at which the Plaintiff made an *ore tenus* motion for Summary Judgment. Defendant concedes that the requirements of subsection 547(b) are satisfied, but argues that the transfers sought to be avoided were made in the ordinary course of business under subsection 547(c)(2).

5. On August 12, 1996, the Court entered an Order Denying the Defendants and Trustee's Motions for Summary Judgment because there was insufficient evidence to determine: (1) whether the disputed payments were part of the normal business relationship between the parties; and (2) whether Defendant conducted unusual or extra ordinary collection efforts to obtain the disputed payments. (Adv.Rec.12–13). The Court also left unanswered, whether to construe both subparagraphs "B" and "C" of subsection 547(c)(2) of the Bankruptcy Code subjectively, looking only to the relationship between the parties, or whether to construe subparagraph "B" subjectively, while subparagraph "C" is ana-

lyzed objectively by looking at industry norms. (*Id.*).

6. The record shows that it was Defendant's practice to send invoices to business borrowers ten (10) days before monthly payments were due, and to send past due notices to borrower ten (10) days after payment was due. (Adv.Rec.11).

7. Also, over the life of the loan, Debtor and Defendant established a certain payment pattern. Defendant's Loan Officer testified that Defendant always accepted Debtor's late payments. Debtor established the following payment record with Defendant:

| Due Date | Payment Date | Days Late | Payment Amount | Late Charge |
|---|---|---|---|---|
| 11–13–94 | 11–30–94 | 17 | $3,080.00 | — |
| 12–13–94 | 12–16–94 | 3 | $3,234.00 | $154.00 |
| 1–13–95 | 1–19–94 | 6 | $3,080.00 | — |
| 2–13–95 | 3–2–95 | 17 | $3,234.00 | $154.00 |
| 3–13–95 | 4–4–95 | 22 | $3,080.00 | — |
| 4–13–95 | 5–10–95 | 27 | $3,388.00 | $308.00 |
| 5–13–95 | 6–7–95 | 25 | $3,050.00 | — |
| 6–13–95 | 6–29–95 | 16 | $3,234.00 | $124.00 |
| 7–13–95 | 8–9–95 | 27 | $3,264.00 | $184.00 |
| 8–13–95 | 9–7–95 | 25 | $3,358.00 | $278.00 |
| 9–13–95 | 10–6–95 | 23 | $3,264.00 | $154.00 |
| 10–13–95 | 11–6–95 | 24 | $3,202.50 | $152.50 |
| 11–13–95 | 12–7–95 | 24 | $3,234.00 | $154.00 |
| 12–13–95 | 1–9–96 | 27 | $3,234.00 | $154.00 |
| 1–13–96 | 2–8–96 | 26 | $3,234.00 | $154.00 |
| 2–13–96 | 2–21–96 | Payoff | $119,594.28 | — |

(Defendant Ex. 3).

### CONCLUSIONS OF LAW

■ The sole issue in this proceeding is whether the transfers sought to be avoided were made within the ordinary course of business exception under subsection 547(c)(2) of the Bankruptcy Code. Subsection 547(c)(2) provides that:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms[.]

11 U.S.C. § 547(c)(2) (1994). The Eleventh Circuit Court of Appeals has highlighted that the Congressional intent of this subsection is "to leave undisturbed normal financial relations, because [such an exception] does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditor during the debtor's slide into bankruptcy." *Marathon Oil Co. v. Flatau (In re Craig Oil Co.)*, 785 F.2d 1563, 1566 (11th Cir.1986) (citing H.R.Rep. No. 595, 95th Cong. 1st Sess. 373–74 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6329) (alterations in original). The creditor has the burden of proving that the requirements for the ordinary business exception have been satisfied. *Grant v. Sun Bank/North Central Florida, et al. (In re Thurman Construction, Inc.)*, 189 B.R. 1004, 1011–12 (Bankr.M.D.Fla.1995) (citing *Braniff, Inc. v. Sundstrand Data Control, Inc. (In re Braniff, Inc.)*, 154 B.R. 773, 780 (Bankr.M.D.Fla.1993)). The standard of proof is preponderance of the evidence. *Id.* Subsection 547(c)(2) is narrowly construed. *Id.*

#### 1. Construction of Paragraphs "B" and "C" of Subjection 547(c)(2).

First, subparagraph "A" of subsection 547(c)(2) is satisfied because both parties agree that the debt was incurred in the ordinary course of business between the Debtor and Defendant. Therefore, the controversy in this case surrounds the subparagraphs "B" and "C" of subsection 547(c)(2).

Next, the Court must determine whether the disputed payments were made within the ordinary course of business or financial affairs of the Debtor and Defendant, and made according to ordinary business terms. In the past, this Court has employed the following four factors to determine whether transfers

were made within the ordinary course of business exception under subsection 547(c)(2): (1) the prior course of dealings between the parties, (2) the amount of the payments, (3) the timing of the payments, and (4) the circumstances surrounding the payments. *Thurman,* 189 B.R. at 1011–12 (citations omitted).

■ In this case, the Plaintiff and Defendant disagree on the proper construction of subsection 547(c)(2). The Plaintiff argues the Court should conduct a subjective inquiry of subparagraph "B" of 547(c)(2) using the four factors outlined above, while subparagraph "C" of 547(c)(2) should be analyzed objectively by looking at the industry norms. (Adv.Rec. 17). However, Defendant argues that both subparagraphs "B" and "C" of subsection 547(c)(2), should analyzed subjectively, looking only to the Debtor and Defendant's prior dealings with each other, not objectively examining industry norms. (Adv. Rec. 16). Therefore, the Court must first decide how subparagraphs "B" and "C" should be construed.

A majority of courts, including the courts in this district, have applied the four factors outlined above subjectively to subparagraphs "B" and "C" of subsection 547(c)(2). *See, e.g., Thurman,* 189 B.R. at 1012; *Braniff,* 154 B.R. at 780; *Hyman v. Stone Lumber Co. (In re Winter Haven Truss Co.),* 154 B.R. 592, 594 (Bankr.M.D.Fla.1993) (citations omitted); *Florida Steel Corp. v. Stober (In re Industrial Supply Corp.),* 127 B.R. 62, 65 (Bankr.M.D.Fla.1991) (citations omitted). However, these courts have not explicitly stated that the subjective inquiry is appropriate.

Although the Eleventh Circuit Court of Appeals has not specifically addressed whether subparagraphs "B" and "C" should be construed subjectively, it focused only on relationship between the debtor and creditor to make its determinations as to subparagraphs "B" and "C." *See Craig Oil Co.,* 785 F.2d at 1566–68. Also, in *Thurman,* this Court, addressing subparagraph "C" of 547(c)(2), indicated that evidence of "industry norms" was not offered to prove that transfers were "made according to ordinary busi-

ness terms." *Thurman,* 189 B.R. at 1012. However, the Court ultimately concluded that an examination of the prior dealings between the parties was sufficient in deciding whether transfers were made "according to ordinary business terms." *Id.*

A minority of courts have construed subparagraph "B" subjectively, examining only the relationship between the parties, and construed subparagraph "C" objectively, looking at industry norms. *See, e.g., Fiber Lite Corp. v. Molded Acoustical Prod., Inc. (In re Molded Acoustical Prod. Inc.),* 18 F.3d 217, 226 (3rd Cir.1994) (stating that: "we read subsection C as establishing a requirement that a creditor prove that the debtor made its pre-petition preferential transfers in harmony with the range of terms prevailing as some relevant industry norms."); *In re Tolona Pizza Prod. Corp.,* 3 F.3d 1029, 1033 (7th Cir.1993) (concluding that "ordinary course of business terms" refers to the range of terms that encompasses the practices in which firms similar in some general way to the creditor in question engage); *Logan v. Basic Dist. Corp. (In re Fred Hawes Org. Inc.),* 957 F.2d 239, 245 (6th Cir.1992) (holding that subsection C requires proof that the payment is ordinary in relation to the standard prevailing in the relevant industry); *Yurika Foods Corp. v. United Parcel Service (In re Yurika Foods Corp.),* 888 F.2d 42, 45 (6th Cir.1989) (examining industry norms to determine whether subparagraph "C" has been satisfied).

These courts have reasoned that, "the difficulty with majority approach is that it ignores subparagraph 'C' and thereby makes it a nullity, or it interprets subparagraph 'C' to require the same showing as subparagraph 'B' and thereby makes it superfluous." *See Fred Hawes Org. Inc.,* 957 F.2d at 243–44. These courts further reasoned that Congress clearly intended to establish separate, discreet, and independent requirements for subparagraphs "B" and "C" which creditors would have to fulfill to prevent avoidance.

*Id.* Thus, subparagraph "C" should be construed objectively, establishing a requirement that a creditor prove that the debtor made its pre-petition preferential transfers in harmony with industry norms. *Id.*

This Court declines to follow the minority approach and concludes that a subjective inquiry is appropriate. The Court is persuaded by *Graphic Prod. Corp. v. WWF Paper Corp. (In re Graphic Prod. Corp.),* 176 B.R. 65 (Bankr.S.D.Fla.1994) (Cristol, C.J.). In that case, a Chapter 11 debtor-in-possession brought an adversary proceeding to avoid alleged preferential transfers, and the defendant asserted, among other things, the ordinary course of business exception pursuant to subsection 547(c)(2). *Id.* at 68. The plaintiff contended that the court should have required compliance with terms ordinary in the industry. *Id.* at 71. The court found that subparagraph "C" must be analyzed by examining the business practices between the particular parties involved and not to the generally prevailing industry practices. *Id.* The court reasoned that:

> [R]eading 11 U.S.C. § 547(c)(2)(C) as requiring compliance with the terms ordinary in the industry would negate any benefit the exception would convey. That reading would require that the parties would conduct themselves according to business norms, restricting their chosen course of dealing to an industry standard. The exception was created to allow debtors and creditors to continue in their normal course of business, and 'discourage unusual action by either the debtor or his creditor during the debtor's slide into bankruptcy'.... To hold otherwise would be to place the exception out of reach of all those debtors and creditors for whom it was written.

*Id.* (quoting *In re Equipment Co. of Am.,* 135 B.R. 169, 173 (Bankr.S.D.Fla.1991)). This rationale is in accord with the courts in this district and the Eleventh Circuit · Court of Appeals. *See, e.g., Craig Oil Co.,* 785 F.2d at 1566–68; *Thurman,* 189 B.R. at 1012. Therefore, this Court will examine both subparagraphs "B" and "C" subjectively, looking only to the relationship between the parties.

Having concluded that the subjective analysis is appropriate, the Court now turns to applying the four factors outlined in *Thurman.*

### 2. Application Of The Four Factors.

█ The first factor the Court considers is the prior course of dealing between the parties. Here, the payment history between Defendant and Debtor shows that Debtor made all its payments after the due date, and this pattern did not change during the preference period. (Defendant Ex. 3). Defendant's loan officer also testified that Defendant always accepted late payments, and the manner in which the payments were made (via checks drawn on Debtor's account) did not change during the preference period. Thus, the course of dealing between the parties remained the same before and during the preference period.

The second factor considered is the amount of the payments. Here, the amount of the payments did not change during the preference period. Each of the three payments sought to be avoided is $3,234, which consists of $3,080 in principal and a late charge of $154. The evidence shows that the average payment amount immediately before the preference period was $3,274.83. This is $40 above the amount of each payment during the preference period. Thus, there is no indication that Debtor paid Defendant unusually large payments during the preference period.

█ The third factor deals with the timing of each payment. The Eleventh Circuit has held that "lateness" is an important factor in deciding whether payments should be protected by the ordinary course of business exception. *Craig Oil,* 785 F.2d at 1567. There is a presumption that late payments are outside the ordinary course of business, but such presumption may be overcome by a showing that late payments were in the ordinary course of the parties' business. *Braniff,* 154 B.R. at 780–81.

In this case, Defendant has overcome the presumption that late payments were not in the ordinary course of the parties' business. During the preference period, the payments were made an average of 25.66 days late, while immediately before the payments were

made an average of 24 days late. Thus, Debtor's late payments over 20 days late on the average, and this did not change during the preference period.

 Finally, with the fourth factor, the Court examines the circumstances surrounding the payments. Subsection 547(c)(2) protects those payments that do not result from "unusual" or "extraordinary" debt collection practices. *Craig Oil Co.*, 785 F.2d at 1567. In this case, Defendant followed its routine collection activities. Defendant sent invoices to the Debtor prior to the due date, which were then followed by past due notices, followed by phone calls. These activities were routine over the life of the loan, and Defendant's collection activities did not increase during the preference period.

## CONCLUSION

Therefore, the Court concludes that Defendant has met its burden of proving that the preferential transfers in the amount of $9,702 were made in the ordinary course of business, and are not avoidable. The Court will enter a separate order consistent with these findings of fact and conclusions of law.