In re L. BEE FURNITURE
CO., INC., Debtor.

Charles W. GRANT, Trustee, Plaintiff,

v.

RENDA BROADCASTING
CORPORATION,
Defendant.

Bankruptcy No. 96–1017–BKC–3P7.
Adv. No. 96–260.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Jan. 15, 1997.

Ronald Bergwerk, Jacksonville, FL, for Plaintiff.

Aaron Cohen, Jacksonville, FL, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding came before the Court on a complaint to recover preferential transfers pursuant to 11 U.S.C. § 547(b). Upon the evidence presented at trial on November 26, 1996, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Defendant owns a radio station in Jacksonville, Florida. (Tr. 9). Debtor advertised with Defendant's radio station from 1991 to 1996.

2. Although the payment terms of Defendant's invoices to the Debtor contained payment terms of "thirty days net," the debtor consistently paid its invoices between 90 and 120 days. (Tr. 9–10; Defendant Ex. 1). Defendant's other customers usually paid outstanding invoices between 60 and 90 days (Tr. 9).

3. In the spring of 1995, Debtor decided to increase its advertising on Defendant's station, using a theme of liquidation. (Tr. 10–11). At Debtor's suggestion, Defendant agreed to extend Debtor's advertising credit, provided the Debtor did not allow any of the invoices to become outstanding past 90 days. (Tr. 11–12). This policy was reduced to writing on April 3, 1995. (Defendant Ex. 2; Tr. 12, 24).

4. Under the parties' arrangement, the Defendant's business manager would telephone the Debtor at the beginning of each month and relate the amount that was in the 90–day aging category. Debtor, at its discretion, would then divide that amount into installments and issue a series of post-dated checks in like amounts. Defendant would pick up the checks and deposit them as they matured. (Tr. 11–12).

5. For four months following the agreement, Debtor carried outstanding invoices past 120 days. (Tr. 19–20). After August 1995, Debtor did not carry a balance past 120 days. (Tr. 19–20; Defendant Ex. 3).

6. Following the implementation of this procedure, Debtor forwarded to Defendant multiple series of post-dated checks for past-due invoices. In June 1995, Defendant received two checks for $2,000 each, which were applied against invoice 9511 for February 1995 and invoice 9791 for April 1995. (Tr. 18). In July 1995, Defendant received two checks for $3,900 each which were applied to April invoice 9791. (Tr. 18). In August 1995, Defendant received one check for $2,478, and one check for $2,006.25 which were applied to invoices 10181 and 10129 for

May 1995. (Tr. 18). In September 1995, Defendant received two checks for $3,203.81, and one check for $3,203.83, which were applied to invoice 10339 for June 1995. In October 1995, Defendant received three checks of $3,327.18 each, which were applied to invoice 10535 of July 1995. (Tr. at 17.).

7. On February 23, 1996, Debtor filed for relief under Chapter 7 of the Bankruptcy code, and Plaintiff was appointed as trustee. (Doc. 1 Main Case).

8. Plaintiff alleges that within 90 days prior to is bankruptcy filing, Debtor transferred to Defendant the following series of checks, totaling $27,435:

Series A

| Check No. | Amount | Date |
| --- | --- | --- |
| 28752 | $3,600.00 | 11/28/95 |
| 28753 | 3,600.00 | 12/05/95 |
| 28754 | 3,600.00 | 12/06/95 |
| 28755 | 3,675.50 | 12/18/95 |

Series B

| Check No. | Amount | Date |
| --- | --- | --- |
| 29277 | $3,240.00 | 01/10/96 |
| 29278 | 3,240.00 | 01/16/96 |
| 29279 | 3,240.00 | 01/22/96 |
| 29280 | 3,240.00 | 01/30/96 |

(Adv.Pro.Doc. 1)

9. The checks in Series A were applied to invoice 10713 of August, 1995. (Tr. 14). The checks in Series B were applied to invoices 107359, 10884, and 10885 of September, 1995. (Tr. 15).

10. At trial, Defendant stipulated that all the elements required to establish a preference under 11 U.S.C. § 547(b) had been met, but argued that the transfers are protected from the Plaintiff's avoidance powers by the ordinary course of business exception of 11 U.S.C. § 547(c)(2). (Tr. 2).

## CONCLUSIONS OF LAW

■ The single issue before the Court is whether the ordinary course of business exception of 11 U.S.C. § 547(c)(2) applies to protect the preferential transfers from the trustee's avoidance powers. Bankruptcy Code section 547(c)(2) provides:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms . . .

11 U.S.C. § 547(c)(2).

■ The Defendant bears the burden of proving that the exception applies, and must do so by a preponderance of the evidence. *Grant v. Sun Bank/North Central Florida (In re Thurman Construction, Inc.),* 189 B.R. 1004, 1011 (Bankr.M.D.Fla.1995) (citing *Braniff, Inc. v. Sundstrand Data Control, Inc., (In re Braniff, Inc.),* 154 B.R. 773, 780 (Bankr.M.D.Fla.1993)).

### A. Interpretation of the Ordinary Course of Business Exception

■ Plaintiff argues that 11 U.S.C. § 547(c)(2) contains both a subjective (or vertical) and an objective (or horizontal) test. Under this interpretation, Plaintiff suggests that

[t]he subjective prong, subsections (A) and (B), requires proof that the debt and its payment are ordinary in relation to other business dealings between that creditor and that debtor. The objective prong, subsection (C), requires proof that the payment is ordinary in relation to the standard prevailing in the relevant industry.

(Plaintiff Brief at 2) (citing *WJM, Inc. v. Massachusetts Dept. of Public Welfare,* 840 F.2d 996, 1010–11 (1st Cir.1988)).

This Court, however, has determined that a subjective inquiry is appropriate for all subsections of § 547(c)(2). *Grant v. Suntrust Bank, Central Florida, N.A. (In re L. Bee Furniture Co., Inc.),* 203 B.R. 778 (Bankr.M.D.Fla.). This interpretation has been consistently applied throughout this District. *See Florida Steel Corp. v. Stober (In re Industrial Supply Corp.),* 127 B.R. 62, 65 (M.D.Fla.1991) (holding that in applying § 547(c)(2), "[t]he inquiry focuses on analysis of the business practices which were unique

to the particular parties involved and not to generally prevailing industry practices."); and *Graphic Productions Corporation v. WWF Paper Corporation (In re Graphic Productions Corporation)*, 176 B.R. 65, 71 (Bankr.S.D.Fla.1994) (holding that "in determining whether the ordinary course of business exception applies, the inquiry must be directed to an analysis of the business practices which were unique to the particular parties involved and not to generally prevailing industry practices.")). The Eleventh Circuit Court of Appeals has also applied § 547(c)(2) subjectively, focusing on the specific business relationship of the parties, rather than industry practices. *Marathon Oil Company v. Flatau (In re Craig Oil Company)*, 785 F.2d 1563, 1565 (11th Cir. 1986).[1]

### B. Application of § 547(c)(2)

**1. Transfers were in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee pursuant to § 547(c)(2)(A).**

The transfers Plaintiff seeks to recover were made in payment of advertising expenses incurred by the debtor. Defendant is engaged in radio broadcasting, and offers advertising on its station as a regular portion of its business. Debtor, a furniture retailer, contracted with defendant for advertising services and incurred the costs of the advertising in the normal course of its business. The Court concludes that the transfers were in payment of a debt incurred in the ordinary course of business or financial affairs of the Debtor and the Defendant.

**2. Transfers were made in the ordinary course of business or financial affairs of the debtor and the transferee and were made according to ordinary business terms pursuant to § 547(c)(2)(B) and (C)**

■ This Court, and others in this District, have consistently applied the following four factors when determining whether transfers are protected from the plaintiff's avoidance powers under § 547(c)(2)(B) and

(C): (1) the prior course of dealing between the parties; (2) the amount of the payments; (3) the timing of the payments; and (4) the circumstances surrounding the payments. *Grant v. Suntrust Bank, Central Florida, N.A. (In re L. Bee Furniture Co., Inc.)*, 203 B.R. 778 (Bankr.M.D.Fla.) (citing *Grant v. Sun Bank/North Central Florida (In re Thurman Construction, Inc.)*, 189 B.R. 1004 (Bankr.M.D.Fla.1995). *See also Florida Steel Corp. v. Stober (In re Industrial Supply Corp.)*, 127 B.R. 62 (M.D.Fla.1991).

#### a. Prior Course of dealing

The Eleventh Circuit Court of Appeals has held that the purpose of the ordinary course of business exception is "to leave undisturbed normal financial relations, because [such an exception] does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditor during the debtor's slide into bankruptcy." *Marathon Oil Company v. Flatau (In re Craig Oil Company)*, 785 F.2d 1563, 1566 (11th Cir.1986).

■ Periodic changes in parties' business dealings or the operation of seemingly peculiar procedures is not indicative of an attempt to abandon the prior course of dealing between the parties. A sister court in this District has held that "[w]hile § 547(c)(2) requires [a] transfer to be made in the 'ordinary course of business', it does not require the transfer to be common. An extensive showing that the transaction occurred often, or even regularly, is not necessary. A transaction can be ordinary and still occur only occasionally." *Graphic Productions Corporation v. WWF Paper Corporation (In re Graphic Productions Corporation)*, 176 B.R. 65, 74 (Bankr.S.D.Fla.1994).

Although the payment arrangement between the Debtor and Defendant periodically changed, their course of dealing and their business relationship remained essentially the same. Prior to the spring of 1995, Debtor consistently paid its outstanding invoices in cycles between 90 and 120 days. Even

---

1. For this Court's comparison of the subjective and objective approaches to interpretation of § 547(c)(2), see *Grant v. Suntrust Bank, Central Florida, N.A. (In re L. Bee Furniture Co., Inc.)*, 203 B.R. 778 (Bankr.M.D.Fla.1996).

after Debtor and Defendant agreed to adhere to a 90–day payment schedule, Debtor still had outstanding invoices in the 120 day category. The post-dated check payment procedure utilized by the Debtor and the Defendant, while perhaps different from procedures Defendant employed with other customers, was not uncharacteristic of the Defendant's unique business relationship with the Debtor.

In this case, the *normal* course of dealing between Debtor and Defendant could be characterized as *unusual* and subject to variation depending on the dynamics of Debtor's advertising needs. The Court finds that the payments Plaintiff seeks to recover were the product of this on-going course of dealing and were not outside the prior course of dealing of the parties.

### b. Amounts of Payments

The amounts of the two series of checks issued to Defendant during the preference period were not different from those previously issued by the Debtor. The Debtor provided installment payments to pay invoices issued by the Defendant. The invoices reflected the air time charges incurred by the Debtor, and any variation in the amount of the payments is attributable to the normal course of the advertising relationship between the Debtor and the Defendant.

### c. Timing of Payments

■ The timing of the payments in this case was also consistent with the previous practice of the Defendant and the Debtor. Although the Eleventh Circuit Court of Appeals has held that lateness can be a factor in determining whether the transfers are within the normal course of business, this Court agrees with others in this District which have held that "[l]ate payments can fall within the ordinary course of business exception if the prior course of conduct between the parties demonstrates that those types of payments were ordinarily made late." *Graphic Productions Corporation v. WWF Paper Corporation (In re Graphic Productions Corporation)*, 176 B.R. 65, 70 (Bankr.S.D.Fla.1994). *See Marathon Oil Company v. Flatau (In re Craig Oil Company)*, 785 F.2d 1563 (11th Cir.1986). *See also Grant v. Suntrust Bank, Central Florida, N.A. (In re L. Bee Furni-*

*ture Co., Inc.)*, 203 B.R. 778 (Bankr. M.D.Fla.) (holding that "[t]here is a presumption that late payments are outside the ordinary course of business, but such presumption may be overcome by a showing that late payments were in the ordinary course of the parties' business.")) *Id.* at *782.

In this case, the Debtor routinely paid Defendant well past the "net 30 days" terms contained on the invoices. The evidence indicates that the Debtor's normal payment practice was between 90 and 120 days, even after the parties agreed on a 90–day schedule. Because the Debtor consistently made and Defendant consistently accepted the late payments, the late payments made during the preference period are not outside the parties ordinary course of business.

### d. Circumstances Surrounding Payment

The Eleventh Circuit Court of Appeals has stated that § 547(c)(2) is designed to protect "those payments which do not result from 'unusual' debt collection or payment practices." *Marathon Oil Company v. Flatau (In re Craig Oil Company)*, 785 F.2d 1563, 1566 (11th Cir.1986). Plaintiff argues that the Defendant employed unusual collection procedures when it adopted "new payment practices and decided to institute and stringently adhere to new, more right credit terms" under the April 3, 1995 agreement. (Plaintiff Brief at. 3).

However, the post-dated check procedure utilized by Debtor and Defendant was initiated by the Debtor. (Tr. 24). The Defendant never threatened to reduce or eliminate Debtor's credit, or forced Debtor to make payments outside the terms agreed on by the parties. The parties adhered to a payment schedule that was characteristic of their business relationship. The circumstances of the Debtor's business needs mandated a different practice for payment of advertising costs, and the Defendant accommodated that need.

### CONCLUSION

The Court finds that the payments made by Debtor to Defendant during the preference period are protected under the ordinary course of business exception of § 547(c)(2).

The Plaintiff is not entitled to recover the payments as an avoidable transfer. The Court will enter a separate judgment consistent with these findings of fact and conclusions of law.