In re L. BEE FURNITURE
CO., INC., Debtor.

Charles W. GRANT, Trustee, Plaintiff,

v.

COSEC INTERNATIONAL,
INC., Defendant.

Bankruptcy No. 96–1017–BKC–3P7.
Adv. No. 96–300.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

March 20, 1997.

990

Ronald Bergwerk, Jacksonville, FL, for Plaintiff.

Aaron Cohen, Jacksonville, FL, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding came before the Court upon a complaint to recover preferential transfers pursuant to 11 U.S.C. § 547(b). Upon the evidence presented at the trial on January 9, 1997, the Court enters the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. On February 23, 1996, L. Bee Furniture, Co., Inc. (Debtor) filed for relief under Chapter 7 of the Bankruptcy Code. (Doc. 1). On May 16, 1996, Charles W. Grant, Chapter 7 Trustee (Plaintiff), filed this adversary proceeding to avoid preferential transfers totalling $8,264. (Adv.Rec. 1). In its answer, Cosec International, Inc. (Defendant) concedes that the payments were preferential transfers, but contend that they are protected by the ordinary course of business exception pursuant to 11 U.S.C. § 547(c)(2). (Adv. Rec. 5–6).

2. Defendant is an advertising and production company, located in Tulsa, Oklahoma. Defendant designs advertisement campaigns for its clients. Debtor has been one of Defendant's clients since 1980, and Defendant provided the Debtor with various advertisement campaigns.

3. Debtor typically placed telephonic orders with Defendant for an advertising campaign, and Defendant then prepared it and furnished it to Debtor, along with an invoice. The terms of each invoice was "net 10 days."

4. Defendant presented evidence regarding the payment history between the parties from January 1991 to December 1995. The payment history reveals that the "net 10 days" terms were never complied with by the Debtor nor enforced by the Defendant. Between 1991 and 1995, Debtor made payments as little as ten (10) days past due and as many as 168 days beyond the due date, averaging approximately seventy-five (75) days beyond the "net 10 days" terms. (Debtor Ex. 1).

5. Between September 1995 and December 1995, Defendant sent Debtor four invoices totaling $8,264. The invoices contained the pre-printed "net 10 days" terms. Debtor paid the four invoices with the follow-

ing three checks which were cleared during the preference period:

| Check No | Date Paid | Amount |
|----------|-----------|--------|
| 29271 | 12/29/95 | $3,255 |
| 29272 | 01/04/96 | $3,045 |
| 29273 | 01/21/96 | $2,964 |
| | **TOTAL** | **$8,264** |

(Adv.Rec. 10).

6. Plaintiff seeks to recover the $8,264, and argues that all three payments were preferential transfers as defined in 11 U.S.C. § 547(b), and are not protected by the ordinary course of business exception under 11 U.S.C. § 547(c)(2). In its post-trial memorandum, Plaintiff concedes that subsection 547(c)(2)(A) is satisfied because the debt was incurred in the ordinary course of business for both Debtor and Defendant. (*Id.*). Plaintiff, however, contends that the payments were not made within the ordinary course of the parties' businesses, nor were they made within ordinary business terms pursuant to 11 U.S.C. § 547(c)(2)(B) and (C). (*Id.*).

7. A representative of Defendant testified that: (1) payments were not made as a result of any collection measures; (2) Defendant always accepted late payments and never charged interest or late fees on late payments; (3) Defendant did not threaten to withhold future services unless outstanding balances were reduced; and (4) Defendant made no threats to sue. Testimony was also offered that, Defendant routinely accepted Debtor's postdated checks.

### CONCLUSIONS OF LAW

The sole issue is whether the transfers sought to be avoided are protected by the ordinary course of business exception under subsection 547(c)(2) of the Bankruptcy code. Subsection 547(c)(2) provides that:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms[.]

11 U.S.C. § 547(c)(2) (1994). The Eleventh Circuit Court of Appeals has highlighted that the Congressional intent of subsection 547(c)(2) is "to leave undisturbed normal financial relations, because [such an exception] does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditor during the debtor's slide into bankruptcy." *Marathon Oil Co. v. Flatau (In re Craig Oil Co.)*, 785 F.2d 1563, 1566 (11th Cir.1986) (citing H.R.Rep. No. 595, 95th Cong. 1st Sess. 373–74 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 6329) (alterations in original). The creditor has the burden of proving that the requirements for the ordinary business exception have been satisfied. *Grant v. Sun Bank/North Central Florida, et. al., (In Re Thurman Construction, Inc.)*, 189 B.R. 1004, 1011–12 (Bankr.M.D.Fla.1995) (citing *Braniff v. Sundstrand Data Control, Inc., (In re Braniff, Inc.)*, 154 B.R. 773, 780 (Bankr.M.D.Fla. 1993)). The standard of proof is preponderance of the evidence, and subsection 547(c)(2) should be narrowly construed. *Id.*

1. **Payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee.**

The parties have agreed that subparagraph "A" of subsection 547(c)(2) is satisfied because the debt was incurred in the ordinary course of business between the Debtor and Defendant. (Adv.Rec. 10). Therefore, the Court will decide if subparagraphs "B" and "C" of subsection 547(c)(2) are also satisfied.

2. **Transfer was made in the ordinary course of business or financial affairs of the debtor and the transferee and transfer was made according to ordinary business terms.**

This Court has held that subparagraphs "B" and "C" of 547(c)(2) should be

analyzed subjectively, examining the relationship between the respective parties.[1] This Court has applied the following four factors to determine whether transfers are protected by the ordinary course of business exception: (1) the prior course of dealings between the parties, (2) the amount of the payments, (3) the timing of the payments, and (4) the circumstances surrounding the payments. *Id.* (citing *Thurman,* 189 B.R. at 1011–12).

### a. Prior Course of Dealing

■ The first factor the Court considers is the prior course of dealing between the parties. Plaintiff argues that the evidence reflects "a totally erratic" payment history which cannot be considered ordinary. This Court has recently held that any "[p]eriodic changes in the parties' business dealings or the operation of seemingly peculiar procedures is not indicative of an attempt to abandon the prior course of dealing between the parties." *Grant v. Renda Broad. Corp. (In re L. Bee Furniture),* 204 B.R. 804, 807 (Bankr.M.D.Fla.1997).

In this proceeding, the payment history between the parties shows that the payments were always made beyond the "net 10 days" terms. (Defendant Ex. 1). Payments were made as little as ten (10) days beyond the due date and as many as 168 days beyond the due date. (*Id.*). Therefore, the payments made within the preferential period in the amount of $8,264 are consistent with how the manner parties have done business over the years.

### b. Amount of the Payments

In this proceeding, the amount of each preferential payment was not essentially different from previous payments. The three payments made during the preference period were $2,255, $3,045, and $2,964 respectively. Prior to the preference period, the payments ranged from below $1,000 to above $3,000. Therefore, the payments made within the preferential period are not unusually large.

### c. Timing of the Payment

■ The third factor deals with the timing of each payment. The Eleventh Circuit has held that "lateness" is an important factor in deciding whether payments should be protected by the ordinary course of business exception. *Craig Oil,* 785 F.2d at 1567. There is a presumption that late payments are outside the ordinary course of business, but such presumption may be overcome by a showing that late payments were in the ordinary course of the parties' business. *Braniff,* 154 B.R. at 780–81.

Here, Defendant can overcome the presumption that the late payments are outside the ordinary course of the parties' business. (Defendant Ex. 1). Defendant presented evidence showing that over a five year span, Debtor always paid its invoices beyond the "net 10 days" terms. The payments ranged from ten (10) days late to 168 days late. (*Id.*). Thus, Defendant can overcome the presumption that the late payments are outside the ordinary course of business and prove that the payments totalling $8,264 were within the course of the parties' relationship and ordinary business terms with respect to the parties.

### d. Circumstances Surrounding the Payment

Finally, with the fourth factor, the Court examines the circumstances surrounding the payments. Subsection 547(c)(2) protects those payments that do not result from "unusual" or "extraordinary" debt collection practices. *Craig Oil Co.,* 785 F.2d at 1567.

Here, Plaintiff contends that "the check numbers are in sequence, suggesting that all three were written at one time and the second and third checks in the sequence were postdated." (Adv.Rec. 10, at 2). At the trial, Defendant's representative testified that postdated checks were routinely used by the Debtor. Defendant also presented testimony that: (1) payments were not made as a result

---

**1.** See *Grant v. SunTrust Bank (In Re L. Bee Furniture),* 203 B.R. 778, 781–82 (Bankr. M.D.Fla.1996) for a full discussion on adoption of the subjective analysis for subparagraphs "B" and "C."

of collection measures; (2) Defendant continuously accepted late payments over the years and never charged interest or late fee; (3) Defendant did not threaten to withhold future services unless the outstanding balances are reduced; and (4) Defendant made no threats to sue. Therefore, no evidence was presented that Defendant used unusual collections practices to obtain the $8,264.

## CONCLUSION

Defendant has proved by preponderance of the evidence that the requirements for the ordinary course of business exception have been satisfied, and that it is entitled to retain the preferential transfers totalling $8,264. After considering the prior course of dealing between the parties, and the amount, timing and circumstances surrounding the $8,264 payment, the Court concludes that the payment was made in the ordinary course of business or financial affairs of Debtor and Defendant, and made according to ordinary business terms as between the respective parties. The Court will enter a separate order consistent with these findings of fact and conclusions of law.

## *JUDGMENT*

This adversary proceeding came before the Court upon a Complaint to recover preferential transfers pursuant to 11 U.S.C. § 547(b). Upon findings of fact and conclusions of law separately entered, it is,

**ORDERED:**

1. Judgment is entered in favor of Defendant, Cosec International, Inc., and against Plaintiff, Charles W. Grant, Chapter 7 Trustee.

2. Pursuant to 11 U.S.C. § 547(c)(2), Charles W, Grant, Chapter 7 Trustee may not avoid the preferential transfers made to Cosec International, Inc., in the amount of $8,264.