In re C.J. SPIRITS, INC., Debtor.

Susan K. Woodard, Trustee, Plaintiff,

v.

John B. Godsey, Defendant.

Bankruptcy No. 97–9267–8G7.
Adversary No. 98–254.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Aug. 3, 1999.

Dennis J. LeVine, Dennis J. LeVine and Associates, P.A., Tampa, FL, for Plaintiff.

Alberto F. Gomez, Jr., Morse, Berman & Gomez, P.A., Tampa, FL, for Defendant/Debtor.

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for hearing to consider the Motion for Summary Judgment filed by the Plaintiff, Susan K. Woodard, Trustee.

The Plaintiff commenced this adversary proceeding by filing a Complaint to Avoid Preferential Transfers and to Recover the Property Transferred or its Value. The Complaint contains two Counts. In Count I, the Plaintiff seeks to avoid and recover a payment made to the Defendant, John B. Godsey, as a preferential transfer pursuant to § 547 of the Bankruptcy Code. In Count II, the Plaintiff seeks to avoid and recover the payment as a fraudulent transfer pursuant to § 548 of the Bankruptcy Code.

With respect to Count I, the Defendant has conceded that the operating elements of a preferential transfer are present in this case. (John B. Godsey's Verified Response to Plaintiff's Motion for Summary Judgment, ¶ 4). The only issue as to Count I, therefore, is whether the transfer is excepted from avoidance pursuant to § 547(c)(2) as a payment made in the ordinary course of business. With respect to Count II, the issue is whether the Plaintiff has established that the Debtor received less than reasonably equivalent value in exchange for the transfer.

The Plaintiff contends that there is no genuine issue as to any material fact, and that she is entitled to a judgment as a matter of law.

### Background

The Debtor, C.J. Spirits, Inc., was formed in approximately 1990 or 1991. (Deposition transcript of John B. Godsey, p. 5). The Defendant, John B. Godsey (Godsey), was the incorporator and president of the Debtor.

The business of the Debtor involved the manufacture of a certain alcoholic beverage known as the "Island Squeezer." (Godsey deposition, p. 6). Generally, it appears that the Debtor owned the license to manufacture the beverage, and contracted with Todhunter Enterprises, doing business as Florida Distillers, to produce the beverage at Florida Distiller's facility.

A dispute arose, and the Debtor commenced litigation against Todhunter Enterprises in 1994. (Godsey deposition, p. 18). The Debtor has not engaged in the manufacture of its product since the com-

mencement of the litigation in 1994. (Godsey deposition, p. 18). Further, the Debtor has not maintained a bank account since approximately 1996 or 1997. (Godsey deposition, p. 17).

The litigation with Todhunter Enterprises was settled in March of 1997. In connection with the settlement, the Debtor received the sum of $174,355.81, after payment of attorney's fees and costs. (Godsey deposition, p. 20). The settlement funds were placed in the account of Rywant, Alvarez, Jones & Russo, P.A., the law firm that represented the Debtor.

On March 11, 1997, three checks were written from the settlement funds. First, a check in the amount of $10,000 was written to Robert Vogt. It appears that this check was intended to represent compensation for prior services performed by Mr. Vogt for the Debtor. (Godsey deposition, p. 30). Second, a check in the amount of $125,000 was written to Suncoast Schools Credit Union. This check was written to satisfy an obligation owed by Godsey to Suncoast. According to Godsey, he had borrowed money from Suncoast to infuse into the Debtor's business. (Godsey deposition, pp. 35–36). Finally, a check in the amount of $39,355.81 was written to Godsey. This check represented the remaining balance of the settlement funds, and was intended to constitute repayment of money previously advanced by Godsey to the Debtor. (Godsey deposition, p. 33). The check to Godsey cleared on March 13, 1997.

On June 5, 1997, an involuntary bankruptcy petition was filed against the Debtor. An Order for Relief under chapter 7 was entered on January 29, 1998. Three claims have been filed in the chapter 7 case. First, Sirrom Investments, Inc. filed a secured claim in the amount of $1,170,-801.67. Second, Central Bank of Tampa filed an unsecured claim in the amount of $36,022.19. Finally, Godsey filed an unsecured claim in the amount of $2,500.

The Plaintiff commenced this adversary proceeding to recover the payment to Godsey in the amount of $39,355.81 as a voidable preferential transfer under § 547 of the Bankruptcy Code or, alternatively, as a voidable fraudulent transfer under § 548 of the Bankruptcy Code.

**Discussion**

**I. § 547—Preference.**

■ As stated above, Godsey has conceded that all of the operating elements of a voidable preferential transfer are present in this case. Godsey contends, however, that the Plaintiff may not recover the payment to him because the transfer is excepted from avoidance pursuant to § 547(c)(2) of the Bankruptcy Code. Section 547(c)(2) provides:

**11 USC § 547.  Preferences**

. . .

(c) The trustee may not avoid under this section a transfer—

. . .

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms.

The purpose of the subsection is "to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." S.Rep. No. 95–989 (1978), U.S.Code Cong. & Admin. News 1978, 5787, quoted in *In re Spirit Holding Company, Inc.*, 153 F.3d 902, 904 (8th Cir.1998) and *In re L. Bee Furniture Co., Inc.*, 230 B.R. 185, 189 (Bankr.M.D.Fla.1999).

"A transfer by a debtor must have three characteristics before it qualifies as one made in the ordinary course of business: it must be for a debt incurred in the ordinary course of business, it must be made in the ordinary course of business of [sic] financial affairs of the debtor and the transferee, and it must be made according to ordinary business terms." *In re Spirit Holding Company, Inc.*, 153 F.3d at 904. There is "no precise legal test" for determining whether a particular transfer was made in the ordinary course of business. Instead, courts must assess the peculiar facts of each case. *Id.*

Generally, factors which may be considered in determining whether a transfer is excepted from avoidance under § 547(c)(2) include (1) the prior course of dealing between the parties; (2) the amount of the payments; (3) the timing of the payments; and (4) the circumstances surrounding the payments. *In re National Aerospace, Inc.*, 219 B.R. 625, 628 (Bankr.M.D.Fla.1998); *In re Thurman Construction, Inc.*, 189 B.R. 1004, 1011–12 (Bankr.M.D.Fla.1995).

It is well-established that, since this exception operates as an affirmative defense, the creditor or transferee in a preferential transfer action bears the burden of proving each element of § 547(c)(2). *In re A.W. & Associates, Inc.*, 136 F.3d 1439, 1441 (11th Cir.1998). "It is firmly established that the creditor has the burden of proving, by the preponderance of the evidence, that a transfer was made in the ordinary course of business under § 547(c)(2)." *In re L. Bee Furniture Co., Inc.*, 230 B.R. at 190. See also *In re Tulsa Litho Company*, 229 B.R. 806, 809 (10th Cir. BAP 1999).

In this case, Godsey filed a Verified Response to the Plaintiff's Motion for Summary Judgment. With respect to his defense under § 547(c)(2), the Verified Response contains the following statements:

1. The Debtor routinely required cash infusions from Godsey, or Godsey otherwise loaned money to the Debtor, and the Debtor thereafter repaid the loans. (¶ 5).

2. It is typical and ordinary in a closely held corporation for the principal to loan money to the corporation and for the corporation to repay the loan. (¶ 6). "[I]t is a common practice in closely held companies whether in the liquor distributor business or not, to have principals of that closely held company loan monies from time to time and then have those loans repaid in the ordinary course." (¶ 7).

3. The Debtor was a closely held liquor distributor, and Godsey is not aware of any recognized industry standard for such a business. (¶ 7).

4. The transaction was ordinary as between Godsey and the Debtor and as between other debtors and creditors in the same "industry." (¶ 10).

5. The Debtor never planned to file a bankruptcy petition. (¶ 10).

6. The payment to Godsey was not unusual or aberrant. (¶ 13).

The Court determines that the payment to Godsey from the Debtor's assets was not made in the ordinary course of the Debtor's business within the meaning of § 547(c)(2) of the Bankruptcy Code. The business of the Debtor was the production of alcoholic beverages. The Debtor had not engaged in that business, however, since 1994. The transfer to Godsey in 1997 represented the payment of a debt owed to Godsey by the Debtor. Godsey concedes that the debt arose from "cash infusions" or loans extended by him, the Debtor's principal, to fund the Debtor. (Godsey's Verified Response to Motion for Summary Judgment, ¶¶ 5–7). Consequently, the debt was not incurred by the Debtor in the ordinary course of its business or financial affairs within the meaning of § 547(c)(2)(1).

Long-term loans certainly are not similar to contemporaneous exchange, but are rather "a form of capitalization

which is not generally part of the debtor's day-to-day business activities.... 'Ordinary course' refers to the debtor's normal business operations of selling goods or providing services, not borrowing money."

*In re RDC Corporation,* 88 B.R. 97, 100 (Bankr.W.D.La.1988)(quoting *In re Bourgeois,* 58 B.R. 657, 660 (Bankr.W.D.La. 1986)). The Court in *RDC Corporation* also cited *In re Fulghum Construction Corp.,* 45 B.R. 112, 116 (Bankr.M.D.Tenn. 1984):

The proof in this case established that in conducting its pipe line construction business the debtor would require fairly large amounts of capital in order to obtain job bids and in order to cover overhead expenses between the time a job began and the time payment was received for that particular job.... Although these transactions occurred with some frequency during a six-month period ... they were not transactions within the normal operation of the debtor's business. These short-term loans were made by the defendant in order to allow the debtor to maintain operations despite its capitalization problems. Such transactions are not excepted from avoidance under the "ordinary course of business" exception found within section 547(c)(2).

The Court in *RDC Corporation* concluded that the "obligations at issue in the present case cannot be characterized as operating expense or "trade credit" transactions akin to a substantially contemporaneous exchange." The obligations were extraordinary .... *In re RDC Corporation,* 88 B.R. at 100. Similarly, the debt owed to Godsey in this case was created as a cash infusion or loan to finance the Debtor. The debt was not incurred in the ordinary course of the Debtor's business.

Additionally, the record contains no information regarding the Debtor's prior repayment practices with respect to loans made by Godsey. Consequently, the record does not reflect the timing of any such payments, the amounts of any such payments, or the circumstances surrounding such payments. Further, the record does not reflect the terms or agreement between the parties with respect to the particular loan that was repaid by the check at issue in this case.

It is established by the record, however, that the Debtor had liquidated its primary asset, its cause of action against Todhunter Enterprises, and that the proceeds of the cause of action were placed in the Debtor's attorney's bank account. The entire amount of the settlement fund was disbursed from the attorney's account. The disbursements included the payment to Godsey. Based on these circumstances, the Court concludes that the payment was not made in the ordinary course of dealings between the Debtor and Godsey, as required by § 547(c)(2)(B), or according to ordinary business terms as required by § 547(c)(2)(C).

The payment is not excepted from avoidance by virtue of § 547(c)(2) of the Bankruptcy Code.

## II. § 548—Fraudulent transfer.

Section 548(a)(1)(B) of the Bankruptcy Code, formerly § 548(a)(2), provides:

**11 USC § 548. Fraudulent transfers and obligations**

. . .

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily-

. . .

(B) (i) received less than a reasonably equivalent value in exchange for such transfer of obligation; and

(ii) (I) was insolvent on the date that such transfer was made or such obli-

gation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to repay as such debts matured.

The parties appear to agree that the primary issue in this case under § 548 relates to whether the Debtor received "reasonably equivalent value" in exchange for the payment to Godsey. "[T]he only matter to be resolved is whether the Debtor received reasonably equivalent value in exchange for the transfer." (Plaintiff's Motion for Summary Judgment, p. 9). "Specifically, the trustee is required to show that the debtor received less than reasonably equivalent value in exchange for the transfer." (Godsey's Verified Response to Plaintiff's Motion for Summary Judgment, p. 7).

■ The term "value" is defined in § 548(d)(2) of the Bankruptcy Code.

**11 USC § 548. Fraudulent transfers and obligations**

. . .

(d) (2) In this section—

(A) "value" means property, *or satisfaction or securing of a present or antecedent debt of the debtor*, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor.

(Emphasis supplied). In this case, Godsey asserts in his verified response to the Motion for Summary Judgment that he periodically made loans to the Debtor, and that the payment at issue constituted repayment of the loan. Accordingly, it appears that the Debtor may have received "value" in exchange for the payment in the form of

the satisfaction or partial satisfaction of an antecedent debt owed to Godsey. Since an issue of fact exists, therefore, with respect to whether the Debtor received reasonably equivalent value, the Plaintiff's Motion for Summary Judgment should be denied with respect to the fraudulent transfer action contained in the Complaint.

**Conclusion**

The Plaintiff's Motion for Summary Judgment should be granted with respect to Count I of the Complaint. Godsey acknowledged that all of the operating elements of § 547 were present in this case. The only issue, therefore, was whether the payment to Godsey was made in the ordinary course of the Debtor's business, and therefore excepted from avoidance as a preferential transfer pursuant to § 547(c)(2) of the Bankruptcy Code. The Court concludes that the requirements for the defense set forth in § 547(c)(2) were not satisfied in this case, and that the payment was not made in the ordinary course of business within the meaning of the exception. Consequently, the payment should be avoided as a preferential transfer pursuant to § 547(b) of the Bankruptcy Code.

The Plaintiff's Motion for Summary Judgment should be denied, however, with respect to Count II of the Complaint. An issue of fact exists with respect to whether the Debtor received reasonably equivalent value in exchange for the payment, and the Court therefore cannot conclude that the payment constituted a voidable fraudulent transfer under § 548(a)(1)(B) of the Bankruptcy Code.

Accordingly:

**IT IS ORDERED** that:

1. The Plaintiff's Motion for Summary Judgment is granted in part and denied in part as set forth in this Order.

2. The Plaintiff's Motion for Summary Judgment is granted with respect to Count I of the Complaint, and the transfer of the sum of $39,355.81 from assets of the Debt-

or to John B. Godsey is avoided as a preferential transfer pursuant to § 547(b) of the Bankruptcy Code.

3. The Plaintiff's Motion for Summary Judgment is denied as to Count II of the Complaint.

4. A separate partial Summary Judgment shall be entered consistent with this Order.